**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STEWART DEVELOPMENT, LLC** | **CIVIL ACTION** |
| **VERSUS** | **No. 23-2085** |
| **111 VETERANS BOULEVARD, LLC** | **SECTION I** |

## ORDER & REASONS

Before the Court is defendant 111 Veterans Boulevard, LLC's ("111 Veterans") motion[1] to dismiss plaintiff Stewart Development, LLC's ("Stewart") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Stewart opposes[2] the motion and 111 Veterans has filed a reply.[3] For the reasons that follow, the Court grants the motion in part and denies it in part.

### I.    FACTUAL BACKGROUND

This case arises from a dispute regarding the insurance provisions of a ground lease. Stewart is the owner, developer, and builder of a building known as Heritage Plaza ("Heritage Plaza" or the "building"), a nineteen-story office tower encompassing 353,000 rentable square feet.[4] Stewart leases office space in Heritage Plaza to numerous tenants, including law firms, insurance companies, accounting firms, engineering firms, financial planning institutions, medical practices, and a restaurant.[5]

---

[1] R. Doc. No. 7.
[2] R. Doc. No. 9.
[3] R. Doc. No. 12.
[4] R. Doc. No. 1 (complaint), ¶¶ 5, 8.
[5] *Id.* ¶ 8; *see also* R. Doc. No. 9, at 2.

Although Stewart owns the building, it leases the land on which the building sits pursuant to a ground lease.[6] In 2003, the ground lease was amended to require Stewart to maintain certain levels of insurance.[7] In 2017, 111 Veterans acquired the land on which Heritage Plaza sits and assumed the obligations of the lessor under the ground lease.[8]

In 2022, Stewart listed Heritage Plaza for sale, and 111 Veterans expressed its interest in purchasing the building.[9] As part of these discussions, 111 Veterans entered into a confidentiality agreement which specified that 111 Veterans was privy to certain confidential information for purposes of a potential purchase only.[10] The confidential information included that the loan secured by the building had to be refinanced by May 6, 2023.[11] Ultimately, 111 Veterans did not make a formal or written offer to purchase the building.[12]

On March 16, 2023, shortly after purchase discussions failed, 111 Veterans sent a demand letter to Stewart.[13] The letter claimed that Stewart was in violation of the ground lease because it had failed to maintain insurance on the building in the amounts required by the ground lease and failed to maintain maximum deductibles allegedly set by the ground lease.[14]

---

[6] R. Doc. No. 1, ¶¶ 5–6.
[7] *Id.* ¶ 7.
[8] *Id.* ¶ 10.
[9] *Id.* ¶¶ 14–15.
[10] *Id.* ¶15.
[11] *Id.*
[12] *Id.* ¶ 16.
[13] *Id.* ¶ 17.
[14] *Id.*

On June 15, 2023, Stewart filed this lawsuit seeking a declaratory judgment and damages.[15] Stewart requests a declaratory judgment that (1) the amount of insurance demanded by 111 Veterans is not "reasonably obtainable[,]" (2) "the previous limits of insurance obtained by Stewart were reasonably obtainable[,]" (3) "the failure to obtain the limits of insurance demanded by [111 Veterans was] not a breach[,]" (4) 111 Veterans is "estopped from or has waived any objection to the insurance limits obtained by Stewart[,]" and (5) "the added coverage acquired by [Stewart] was unnecessary and Stewart can terminate the policy at will and will not be forced to continue or renew such added coverage in the future."[16] Stewart also seeks damages based on 111 Veterans' alleged breach of contract through failure to act in good faith,[17] Stewart's alleged detrimental reliance on 111 Veterans' failure to require higher insurance coverage for years,[18] and 111 Veterans' alleged violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA").[19] In response, 111 Veterans filed the instant motion to dismiss, arguing that the complaint fails to state a claim upon which relief can be granted.[20]

## II.    STANDARD OF LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ.

---

[15] *See generally id.*
[16] *Id.* ¶ 59.
[17] *Id.* ¶¶ 61–67.
[18] *Id.* ¶¶ 68–71.
[19] *Id.* ¶¶ 72–77.
[20] R. Doc. No. 7-1, at 1.

P. 12(b)(6). Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Together, these rules demand "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted).

"[T]he face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of *each element* of the plaintiffs' claim." *Hi-Tech Elec., Inc v. T&B Constr. & Elec. Servs., Inc.*, No. 15-3034, 2017 WL 615414, at \*2 (E.D. La. Feb. 15, 2017) (Vance, J.) (emphasis added) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–57 (5th Cir. 2009)). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation and internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal quotations omitted).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

4

unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted). Thus, "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

In considering a motion to dismiss, a district court views the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "[A] district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)).

### III.   ANALYSIS

#### a.   Declaratory Judgment and Breach of Contract Claims

The parties appear to agree that Stewart's declaratory judgment and breach of contract claims largely depend on the interpretation of Section 3(g) of the Fourth Amendment to the ground lease, which is attached to Stewart's complaint.[21] That section provides:

> Whichever party is required to maintain fire insurance on the improvements on the Demised Premises shall keep same insured with financially sound and reputable insurance companies against loss or damage by fire, theft, lightning, windstorm, hail, explosion, riot and civil commotion, aircraft and vehicles, and smoke and such other casualties as are presently included in the so-called Extended Coverage

---

[21] R. Doc. No. 7-1, at 7 (arguing that Stewart's complaint fails to state a claim "most fundamentally because it is based on a misreading of the key provision of the Ground Lease"); R. Doc. No. 9, at 6–15 (arguing in favor of Stewart's reading of Section 3(g)).

Endorsement*; and flood, if reasonably obtainable,* in amounts sufficient to prevent the insured from becoming a co-insurer within the terms of the insurance policies covering such risks, but in any event in an amount not less than 100% of the actual replacement cost of such improvements (exclusive of excavation and foundation costs and costs of underground tanks, conduits, pipes, pilings and other similar underground items), less the actual physical depreciation thereof, and with not more than a $10,000 deductible from the loss payable for any particular occurrence.[22]

According to 111 Veterans, Stewart breached this provision by failing to procure adequate insurance coverage, and therefore 111 Veterans "can hardly be liable for pointing out that breach in its default letter."[23] According to Stewart, 111 Veterans breached this provision by "using an 'arbitrary and unreasonable replacement cost value' to place Stewart in default and try to evict Stewart."[24]

The Court first considers whether, as 111 Veterans argues, Stewart's complaint is in fact "based on a misreading" of this provision of the ground lease.[25] If 111 Veterans' understanding of this provision is correct, 111 Veterans contends that Stewart could not state a plausible claim that 111 Veterans was liable for pointing out this breach in the default letter.[26] 111 Veterans argues that the words "reasonably obtainable" in Section 3(g) of the Fourth Amendment modify only Stewart's obligation

---

[22] R. Doc. No. 1, ¶ 30 (emphasis added); R. Doc. No. 1-1, at 142 (emphasis added).

[23] R. Doc. No. 7-1, at 7.

[24] R. Doc. No. 9, at 7–8. The Court notes that Stewart's argument regarding 111 Veterans' "arbitrary and unreasonable replacement cost value" is only relevant if 111 Veterans' reading of the provision prevails. Stewart seeks a declaration that, pursuant to Section 3(g), it only has to provide casualty insurance limits that are "reasonably obtainable," regardless of the replacement cost for Heritage Plaza and the level of physical depreciation. R. Doc. No. 1, ¶ 59. If Stewart is correct, whether 111 Veterans' replacement cost value is "arbitrary and unreasonable" is irrelevant.

[25] R. Doc. No. 7-1, at 7.

[26] *Id.*

to obtain flood insurance and do not affect Stewart's obligation to procure casualty

insurance.[27] Specifically, 111 Veterans contends that the placement of a semicolon

before the words "and flood" as well as the interpretive principle known as the "last

antecedent rule" support its reading of Section 3(g).[28] Stewart counters that, applying

the interpretive principle known as the "series-qualifier canon," the phrase

"reasonably obtainable" modifies all the listed types of insurance casualties, not just

the last one.[29]

The parties agree that Louisiana law governs the question of contract

interpretation in this diversity action.[30] Pursuant to the Louisiana Civil Code,

"[i]nterpretation of a contract is the determination of the common intent of the

parties." La. Civ. Code. art. 2045. "When the words of a contract are clear and explicit

and lead to no absurd consequences, no further interpretation may be made in search

of the parties' intent." *Id.* art. 2046. However, "when the terms of a written agreement

are susceptible to more than one interpretation, or there is uncertainty or ambiguity

as to its provisions, or the intent of the parties cannot be ascertained from the

language employed, parol evidence is admissible to clarify the ambiguity or to show

the intention of the parties. *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 563 (5th

Cir. 2005) (citing *Martin Exploration Co. v. Amoco Prod. Co.*, 637 So.2d 1202, 1205

(La. App. 1st Cir. 1994); *writ denied*, 644 So.2d 1048 (La. 1994)). "Parol evidence may

---

[27] *Id.* at 8.
[28] *Id.* at 8–11.
[29] R. Doc. No. 9, at 10–11.
[30] R. Doc. No. 7-1, at 9; R. Doc. No. 9, at 6.

not be used, however, to vary, alter or add to the terms of a written contract." *Id.* (citing *Edwards v. State of Louisiana Through the Dep't of Corrections*, 244 So.2d 69, 72 (La. App. 1st Cir. 1971)).

To begin, the Court must determine whether the words of the contract are "clear and explicit." La. Civ. Code. art. 2046. 111 Veterans argues that the semicolon preceding the phrase "and flood, if reasonably obtainable" suggests that "reasonably obtainable" modifies only the obligation to procure flood insurance.[31] 111 Veterans explains that a semicolon conveys "a more distinct break than a comma can signal" and that "limitations or qualifications in one independent clause do not apply to other independent clauses."[32]

As Stewart points out, however, one problem with this argument is that 111 Veterans contends that another clause following the semicolon—the clause requiring an insurance amount "not less than 100% of the actual replacement cost . . . less the actual physical depreciation thereof, and with not more than a $10,000 deductible from the loss payable for any particular occurrence"—applies to the insurance types listed before the semicolon.[33] This significantly undermines the argument that the semicolon was intended as a distinct break designed to set apart only the words "and flood, if reasonably obtainable." Had those words been set off from the rest of the sentence by em dashes instead of a semicolon and comma, for example, it would be clear that the contract unambiguously demarcated this phrase from the rest of the

---

[31] *Id.* at 10–11.
[32] *Id.* (citations omitted).
[33] *See* R. Doc. No. 9, at 12.

sentence such that "reasonably obtainable" modified only the flood insurance requirement. As the clause is written, however, and at this early stage in the litigation, the Court cannot conclude based on the semicolon that the phrase "reasonably obtainable" modifies only the obligation to procure flood insurance based on the presence of a single semicolon in the sentence.

111 Veterans next argues that its understanding of the provision is bolstered by the last antecedent rule, which provides that "a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows."[34] According to 111 Veterans, because "'reasonably obtainable' immediately follows 'flood' and is set off by commas[,]" the phrase "reasonably obtainable" modifies only "flood" pursuant to the last antecedent rule.[35] However, as the Supreme Court has made clear, this rule is "context dependent." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021). Arguably, "flood" appears at the end of a list of different types of insurance, with the semicolon simply intended to indicate the end of the list of casualties "presently included in the so-called Extended Coverage Endorsement" within the broader list.[36]

It is therefore possible that, as Stewart contends, "reasonably obtainable" modifies all types of insurance on the list pursuant to the series-qualifier canon.[37] That canon instructs that, "when there is a straightforward, parallel construction

---

[34] R. Doc. No. 7-1, at 10 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)).
[35] *Id.* at 10–11.
[36] R. Doc. No. 1, ¶ 30; R. Doc. No. 1-1, at 142.
[37] R. Doc. No. 9, at 9–11.

that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series." *Facebook*, 141 S. Ct. at 1169 (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012)) (cleaned up).

It is not clear from the text of Section 3(g) whether flood insurance is an integrated part of the series of different kinds of insurance, or a type of insurance set apart. As noted, 111 Veterans reads the clause requiring insurance to be "in an amount not less than 100% of the actual replacement cost . . . less the actual physical depreciation thereof, and with not more than a $10,000 deductible" to apply to all types of insurance listed.[38] Like "reasonably obtainable," this clause not only appears after the semicolon, but also follows the list of different types of insurance, including flood insurance. Yet the parties seem to agree that it modifies more than just the last antecedent ("flood"). This undermines the application of the last antecedent rule to the phrase "if reasonably obtainable." Based on these ambiguities, the Court is not persuaded that the words of this contract are "clear and explicit[.]" La. Civ. Code. art. 2046.

Because the Court finds that the contract's language is ambiguous, the agreement must be construed "according to the intent of the parties" pursuant to Louisiana law. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) (quoting *Kuswa & Assocs., Inc. v. Thibault Constr. Co.*, 463 So.2d 1264, 1266 (La. 1985)). "Intent is an *issue of fact* which is to be inferred from all of the surrounding

---

[38] R. Doc. No. 1, ¶ 30; R. Doc. No. 1-1, at 142.

circumstances." *Id.* (quoting *Kuswa & Assocs.*, 463 So.2d at 1266). Stewart has

alleged that the parties have a history of interpreting the provision to require Stewart

to obtain "reasonably obtainable" casualty insurance as well as flood insurance.

Accepting as true the allegations in Stewart's complaint, *Iqbal*, 556 U.S. at 678,

throughout the parties' contractual relationship, without any objection from 111

Veterans, Stewart obtained and maintained insurance limits in an amount less than

100% of the actual replacement cost and deductibles in excess of $10,000 for all types

of casualties, not just flood.[39] Because "[a] doubtful provision must be interpreted in

light of . . . the conduct of the parties[,]" La. Civ. Code. Ann. art. 2053, Stewart has

alleged sufficient facts to state a claim for a declaratory judgment regarding the

meaning of this provision of the ground lease amendment and for breach of contract.[40]

### b. Declaratory Judgment Claims Regarding Waiver and Modification

111 Veterans also argues that the complaint's allegations are legally

insufficient to support Stewart's claim or defense of waiver.[41] In reply, 111 Veterans

adds that the complaint also fails to allege sufficient facts to support a claim of

modification by silence.[42] Stewart's complaint requests a declaratory judgment that

"[b]y accepting the lower limits obtained by Stewart and not objecting for several

years, [111 Veterans] is estopped from or has waived any objection to the insurance

---

[39] R. Doc. No. 1, ¶¶ 10–13.
[40] Because the Court finds that the language of the contract is ambiguous, at this time, the Court need not reach Stewart's alternative argument that the parties modified Section 3(g) to apply "reasonably obtainable" to casualty insurance. *See* R. Doc. No. 9, at 15–16.
[41] R. Doc. No. 7-1, at 13–16.
[42] R. Doc. No. 12, at 6–8.

limits obtained by Stewart and through its course of conduct in not objecting [h]as modified the Ground Lease."[43]

Specifically, 111 Veterans contends that Stewart's claims are foreclosed by "a Louisiana decision directly on point that rejects [Stewart's] position."[44] In that case, the Louisiana Fifth Circuit Court of Appeal affirmed a trial court's eviction order based on, among other things, the lessees' failure to obtain the insurance coverage required by the lease. *Edenborn Partners Ltd. P'ship v. Korndorffer*, 652 So. 2d 1027, 1029 (La. App. 1995). On appeal, the lessees argued that "the trial court erred in finding that the inadequate insurance coverage was sufficient grounds for termination of the lease" since "the lease should be considered amended because lessor did not complain about this insurance coverage for over two and one-half years or, alternatively, lessor should be estopped from complaining because of the acceptance of rents in the face of inadequate coverage." *Id.* The court disagreed, noting that "the lease agreement expressly provides that there can be no amendment to the lease except in writing" and "the lease provides that delay by lessor in asserting any rights under the lease will not constitute a waiver of those rights." *Id.* at 1030.

Likewise, the fourth amendment to the ground lease at issue in this case also contains an integration clause prohibiting oral modification.[45] That clause reads: "The Amendment of Ground Lease may not be modified or terminated orally, and constitutes the entire agreement between the parties with respect to the subject

---

[43] R. Doc. No. 1, at 24.
[44] R. Doc. No. 12, at 6.
[45] R. Doc. No. 1-1, at 146.

matter hereof."[46] The ground lease also contains a provision stating: "No waiver of any condition or covenant in this instrument contained or any breach thereof, shall be taken to constitute a waiver of any subsequent breach."[47]

Despite these provisions, Stewart first argues that "written contracts 'may be modified by oral agreement and by the conduct of the parties, even when the contract provides that change order must be in writing.'"[48] Stewart stresses that "[w]hether there is an oral agreement that modified the written contract is a question of fact."[49] Accordingly, Stewart contends that it sufficiently alleged that—as an alternative to its primary argument about the meaning of the contract—the parties modified Section 3(g) to apply "reasonably obtainable" to casualty insurance.[50] Specifically, Stewart alleged that it obtained and maintained "reasonable" casualty insurance in amounts ranging from $40,000,000 to $62,952,212 with deductibles in excess of $10,0000, and 111 Veterans "never voiced any concern or complaint, nor alleged any breach of the Ground Lease."[51]

In reply, 111 Veterans suggests that the rule regarding oral modification and modification through the parties' conduct applies only to construction contracts.[52] Even outside the context of construction contracts, however, courts regularly hold

---

[46] *Id.*

[47] *Id.* at 22.

[48] R. Doc. No. 9, at 15 (quoting *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 150 So. 3d 492, 500 (La. App. 2014)).

[49] *Id.* at 16 (citing *Driver Pipeline Co.*, 150 So. 3d at 501; *Wisinger v. Casten*, 550 So. 2d 685 (La. App. 1989)).

[50] *Id.*

[51] R. Doc. No. 1, ¶ 12.

[52] R. Doc. No. 12, at 7.

that "[i]n Louisiana a written contract may be modified by the mutual consent of the parties even when it contains a provision that it must be modified in writing." *Cenac v. Orkin, LLC*, No. 15-4521, 2018 WL 2970838, at *4 (E.D. La. June 13, 2018) (Zainey, J.) (pest control contract); *see also Taita Chem. Co., Ltd. V. Westlake Styrene Corp.*, 246 F.3d 377, 387 (5th Cir. 2001) (take-or-pay contract); *Durham, Inc. v. Vanguard Bank & Trust Co.*, 858 F. Supp. 617, 621 (E.D. La. 1994) (Carr, J.) (settlement agreement). The *Edenborn Partners* court itself noted that "even if the lease agreement did not expressly preclude an unwritten amendment to the lease, the record in this case does not evidence consent to an amendment of the lease by the actions of the parties." 652 So. 2d at 1031. Accordingly, the Court finds that Stewart has sufficiently alleged that the parties modified the ground lease to survive a motion to dismiss on that question.

With respect to waiver, Stewart argues that it plausibly stated a claim for waiver because its complaint alleges that 111 Veterans knew Stewart was obtaining casualty insurance in those lower amounts for years and failed to exercise its right to object to or reject these amounts.[53] Stewart primarily relies on *Blanchard v. Shrimp Boats of Louisiana, Inc.*, 305 So. 2d 748 (La. App. 1974) for this proposition. In *Blanchard*, the lease contained a clause prohibiting the lessee from subleasing without the express written consent of the lessor. *Id.* at 749. During the term of the lease, the lessee sublet or assigned the lease to several other persons without the

---

[53] R. Doc. No. 9, at 17.

lessor's consent. *Id.* The lessor "knew of the sub-lessees but never objected to their presence and in fact accepted rent directly from them." *Id.*

However, there is no indication that the lease at issue in *Blanchard* contained any provision concerning waiver. As discussed, the ground lease in question in this case contains a provision stating that "[n]o waiver of any condition or covenant in this instrument contained or any breach thereof, shall be taken to constitute a waiver of any subsequent breach."[54] Stewart does not explain why the Court should disregard this provision of the ground lease or why *Edenborn Partners,* a case involving a similar contractual provision, does not control. Accordingly, the Court finds that Stewart has failed to state a claim for waiver based on the text of the ground lease.

### c.  Detrimental Reliance Claim

Next, 111 Veterans argues that the complaint's allegations do not support a claim for detrimental reliance.[55] Pursuant to Article 1967 of the Louisiana Civil Code, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." "To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Luther v. IOM Co. LLC*, 130 So. 3d 817, 825 (La. 2013); *see also Able v. Lenter*, 18-5389, 2019 WL 95468, at *4 (E.D. La. Jan. 3, 2019) (Vance, J.).

---

[54] R. Doc. No. 1-1, at 22.
[55] R. Doc. No. 7-1, at 16–17.

Stewart alleges that it relied on 111 Veterans' "word and conduct" when it relied on 111 Veterans' failure to object to the level of insurance coverage.[56] It also alleges that, in 2023, 111 Veterans "suddenly demanded that Stewart obtain an unreasonably high amount of insurance coverage, purportedly under the terms of the Ground Lease."[57] Stewart then obtained additional insurance coverage through "an up-front payment of $1,275,450.00 in additional premium costs[.]"[58] Stewart argues that 111 Veterans' "change in position . . . has caused Stewart severe monetary damages."[59]

The problem with Stewart's argument, however, is that Stewart points to *111 Veterans'* change in position, not its own. The standard requires *Stewart* to have changed its position in reliance on something 111 Veterans did or failed to do. *See, e.g., Luther*, 130 So. 3d at 825. Instead, as 111 Veterans points out,[60] after 111 Veterans purchased the property, Stewart continued to purchase the same levels of insurance it had purchased before. Nothing in the complaint suggests Stewart changed its position in reliance on 111 Veterans' alleged acquiescence to the insurance coverage. To the extent Stewart is arguing that it changed its position by purchasing additional insurance,[61] that argument fails because Stewart does not allege that it bought this insurance in reliance on 111 Veterans' failure to object to

---

[56] R. Doc. No. 1, ¶ 70.
[57] *Id.* ¶ 69.
[58] *Id.* ¶ 25.
[59] *Id.* ¶ 71.
[60] R. Doc. No. 7-1, at 17.
[61] R. Doc. No. 9, at 18–19.

the level of insurance coverage. Rather, Stewart alleges that it purchased the additional insurance after 111 Veterans sent the default letter objecting to the insurance coverage.[62] Accordingly, Stewart has failed to state a claim for detrimental reliance and the Court dismisses this claim.

### d. LUTPA Claim

Finally, 111 Veterans argues that Stewart's complaint fails to state a claim that 111 Veterans violated LUTPA. 111 Veterans contends that, if the Court accepts its argument that the phrase "reasonably obtainable" modifies only the flood insurance obligation, Stewart was in breach of Section 3(g) when 111 Veterans sent its default letter.[63] In that event, 111 Veterans argues that it would have had "every right" to send the default letter.[64] Because the Court finds the text of Section 3(g) ambiguous and does not decide at this early stage whether "reasonably obtainable" modifies only the flood insurance obligation, dismissal of Stewart's LUTPA claim pursuant to these arguments would be inappropriate at this time.

### IV.   CONCLUSION

As explained herein, Stewart's complaint states plausible claims for a declaratory judgment regarding the ground lease (including pertaining to alleged modification of the ground lease), breach of contract, and violations of LUTPA.

---

[62] R. Doc. No. 1, at 68–71.

[63] R. Doc. No. 7-1, at 17–18.

[64] *Id.* at 18 (citing *Turner v. Purina Mills*, Inc., 989 F.2d 1419, 1423–24 (5th Cir. 1993)).

However, Stewart has not alleged sufficient facts to support its claim for a declaration regarding waiver or its detrimental reliance claim. Accordingly,

**IT IS ORDERED** that 111 Veterans' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it seeks to dismiss Stewart's declaratory judgment claim regarding waiver and its detrimental reliance claim. The motion is **DENIED** in all other respects.

New Orleans, Louisiana, November 21, 2023.

                                       **LANCE M. AFRICK**
                         **UNITED STATES DISTRICT JUDGE**