# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **STEWART DEVELOPMENT, LLC** | * | **CIVIL ACTION NO.: 2:23-cv-02085** |
| | * | |
| **VERSUS** | * | **HON. BRANDON LONG** |
| | * | |
| **111 VETERANS BOULEVARD. LLC** | * | **MAG. JUDGE EVA DOSSIER** |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

---

## PRE-TRIAL ORDER

---

Plaintiff / Defendant-in-Counterclaim, Stewart Development, LLC ("Stewart") and

Defendant / Plaintiff-in-Counterclaim 111 Veterans Boulevard, LLC ("111 Veterans") present the

instant Joint Pretrial Order**:**

## 1.     DATE OF THE PRE-TRIAL CONFERENCE:

The Pre-Trial Conference is scheduled in this matter on Thursday, October 31, 2024, at

10:30 a.m. before the Honorable Judge Brandon Long.

## 2.     COUNSEL AND PARTIES:

Peter J. Rotolo, III (La. Bar No. 21848)
Amy L. McIntire (La. Bar. No. 35241)
**CHAFFE McCALL, LLP**
1100 Poydras Street
2300 Energy Centre
New Orleans, LA  70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
Email:  rotolo@chaffe.com
           mcintire@chaffe.com
**Attorneys for Plaintiff / Defendant-in-Counterclaim Stewart Development, LLC**

#5446973v1

Charles L. Stern, Jr. (La. Bar No. 12451)
Richard L. Traina (La. Bar No. 22170)
**STEEG LAW FIRM, L.L.C.**
201 St. Charles Avenue, Suite 3201
New Orleans, LA 70170
Telephone: 504-582-1199
Facsimile: 504-582-1240
Email: cstern@steeglaw.com
        rtraina@steeglaw.com
**Attorneys for Defendant / Plaintiff-in-Counterclaim 111 Veterans Boulevard. LLC**

## 3.    DESCRIPTION OF PARTIES:

The Plaintiff / Defendant-in-Counterclaim, Stewart, is a Louisiana limited liability company. Stewart is the owner, developer and builder of the building and other improvements at 111 Veterans Boulevard, Metairie, Louisiana 70005, more commonly known as Heritage Plaza ("Building" or "Heritage Plaza"). As ground lessee, Stewart leases the land on which the Building sits pursuant to a Ground Lease.

Defendant / Plaintiff-in-Counterclaim, 111 Veterans, is a Louisiana limited liability company that is part of a set of related companies known as The Feil Organization. 111 Veterans owns the land at 111 Veterans Boulevard, Metairie, Louisiana 70005 on which the Building sits. When 111 Veterans purchased the land in 2017, it did so subject to a recorded Ground Lease in favor Stewart as lessee.

## 4.    JURISDICTION:

This Honorable Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. For purposes of diversity, Stewart is a citizen of Louisiana and Texas, and 111 Veterans is a citizen of New York, Massachusetts, and Florida. In its Complaint, Stewart seeks declaratory judgments as well as damages. In counterclaim, 111 Veterans seeks declaratory judgments. The parties stipulate that the amount in controversy exceeds $75,000.

- 2 -

#5446973v1

**5.     PENDING MOTIONS:**

On June 3, 2024, Stewart filed a Motion for Summary Judgment on Liability (R. Doc. 41). Stewart seeks summary judgment on liability for its declaratory judgment, breach of contract, and LUTPA claims.  111 Veterans opposed the Motion (R. Doc. 45) and Stewart filed a Reply (R. Doc. 49).  Oral argument was heard on October 4, 2024, where the Court took the motion under advisement.

On June 3, 2024, 111 Veterans filed a Motion for Partial Summary Judgment (R. Doc. 43). 111 Veterans seeks partial summary judgment on the contractual interpretation of Section 3(g) of the Fourth Amendment of the Ground Lease ("Ground Lease").  Stewart opposed the Motion (R. Doc. 47) and 111 Veterans filed a Reply (R. Doc. 50).  Oral argument was heard on October 4, 2024, where the Court took the motion under advisement.

On June 17, 2024, Stewart filed a Motion to Exclude Timothy Gold's Expert Opinions and Testimony (R. Doc. 41).  Stewart seeks to exclude certain expert opinions and testimony of 111 Veterans' insurance expert.  111 Veterans opposed the Motion (R. Doc. 53) and Stewart filed a Reply (R. Doc. 55).  The motion is under submission.

On October 16, 2024, Stewart filed its Omnibus Motions in Limine (R.. Doc.66 ) seeking to exclude (1) witnesses from offering legal opinions as to the meaning and interpretation of Section 3(g) of the Ground Lease; (2) 111 Veterans from offering expert testimony in support of its counterclaims against Stewart since 111 Veterans did not serve any expert reports by its Plaintiff-in-Counterclaim expert deadline; and (3) 111 Veterans from suggesting that Stewart breached Section 3(g) for failing to do something lesser.  111 Veterans has opposed the motion (R. Doc. 68 , and Stewart will file a reply.  The motion is under submission.

#5446973v1

**6.**     **SUMMARY OF MATERIAL FACTS CLAIMED BY THE PARTIES:**

**A.     PLAINTIFF / DEFENDANT-IN-COUNTERCLAIM:**

Stewart owns the commercial office building known as Heritage Plaza located at 111 Veterans Memorial Blvd., Metairie, Louisiana 70005.  Heritage Plaza is a 19-story Class A office tower encompassing 353,000 rentable square feet, and Stewart leases this office space to a number of tenants, including law firms, insurance companies, accounting firms, engineering firms, financial planning institutions, medical practices, fitness center, and a restaurant.  Since 1980, Stewart has leased the land on which it built Heritage Plaza pursuant to a Ground Lease.

 In 2003, Stewart obtained a commercial loan backed by the Building, and as part of the loan deal, the Ground Lease was amended to include a provision requiring Stewart to maintain certain levels of insurance on the Building.  Stewart's lender required this amendment to protect itself by specifying that both Stewart and the lender were named loss payees who would receive insurance proceeds upon damage to the Building.  Stewart's lender dictated the terms and language of the provision.  Under this provision, the ground lessor merely owns the ground, has no ownership interest in the Building, and no insurance proceeds have or will ever flow to the ground lessor.  It is this provision that forms the primary basis of this lawsuit.

> Whichever party is required to maintain fire insurance on the improvements on the Demised Premises shall keep same insured with financially sound and reputable insurance companies against loss or damage by fire, theft, lightning, windstorm, hail, explosion, riot and civil commotion, aircraft and vehicles, and smoke and such other casualties as are presently included in the so-called Extended Coverage Endorsement; and flood, <u>if reasonably obtainable</u>, in amounts sufficient to prevent the insured from becoming a co-insurer within the terms of the insurance policies covering such risks, but in any event in an amount not less than 100% of the actual replacement cost of such improvements (exclusive of excavation and foundation costs and costs of underground tanks, conduits, pipes, pilings and other similar underground items), less the actual physical depreciation thereof, and with not more than a $10,000 deductible from the loss payable for any particular occurrence.

Stewart has always maintained that the phrase modifies all ten types of casualties listed in Section

- 4 -

3(g) and that Stewart is obligated to maintain insurance for these casualties at specified levels and deductibles "if reasonably obtainable."

As a matter of grammar, "if reasonably obtainable" must modify all of the listed types of casualties—and not just flood. Stewart did not maintain casualty insurance at replacement cost limits from at least 2013 through 2022. In 2013, an official real estate appraiser determined the value of the Building to be $40 million. At that same time in 2013, Stewart's insurance broker ran a report indicating that the "insurable value (replacement cost)" of the Building was nearly $50 million: But Stewart had historically insured the Building for around $40 million and wanted to maintain that loss limit since it was equal to the recently-appraised value of the Building. Stewart's lender, who had required the insurance language in Section 3(g), explicitly approved Stewart to insure the Building for its $40 million appraised value—even though that was nearly $10 million less than the Building's replacement cost. From 2013 onward and with the lender's approval, Stewart maintained property insurance equal to the Building's appraised value and not the actual replacement cost of the Building.

On November 2, 2017, 111 Veterans bought the land underneath Heritage Plaza and assumed the terms of the Ground Lease as new Ground Lessor. 111 Veterans is a part of the Feil Organization, a New York-based real estate company that owns commercial properties throughout the country, and 111 Veterans owns and manages the land underneath Heritage Plaza. Jeffrey Feil is the sole decision maker for the Feil Organization, which in turn controls and makes all decisions for 111 Veterans. The Feil Organization's purchase of the land was significant because it owned (and still owns) all other Class-A commercial office buildings in Metairie: the Lakeway Center (which is comprised of three separate buildings known as Lakeway I, II, and III) and the Galleria. Heritage Plaza was and is the sole competitor.

- 5 -

#5446973v1

When 111 Veterans assumed the Ground Lease, the prior ground lessor, Capital One, N.A as Trustee of the Margaret Lauer Charitable Trust, certified that Stewart Development was in compliance with the Ground Lease, including the insurance provisions—which 111 Veterans accepted and agreed with. At the time of the assumption and in the years prior, Stewart had maintained insurance around $40 million with deductibles over $10,000 on the Building—because replacement cost coverage with deductibles under $10,000 was not reasonably obtainable. 111 Veterans knew Stewart did not have replacement cost coverage with deductibles under $10,000 when it assumed the Ground Lease. 111 Veterans also knew that the $40 million figure was not the actual replacement cost of the Building because its own insurance broker, Jason Provenzano at HUB International, ran a report calculating the replacement cost of the Building (excluding the garage) to be over $80 million.

From 2017 through present, Stewart consistently maintained around $40,000,000 of insurance on the Building. Every year upon renewal, Stewart sent to 111 Veterans the certificates of insurance showing the insurance limits and deductibles on the Building. The Feil Organization maintained hard copies of these certificates of insurance in its Metairie office and electronic copies in its company-wide systems. At times, 111 Veterans requested additional insurance information which Stewart provided. 111 Veterans always accepted these levels of insurance coverage and never objected to or questioned them.

In early 2021, Stewart was working with Jefferson Parish to expand Heritage Plaza's parking lot to accommodate one its tenants, Desi Vega's Steakhouse. The parish required a simple variance request form, and Stewart asked 111 Veterans to sign off on the form—which 111 Veterans was required by the Ground Lease to sign. But 111 Veterans repeatedly refused to do so. In refusing, Mr. Feil made his motive clear: "Why would I be such a good landlord? They are

- 6 -

my competition." Even after Stewart's outside counsel sent a demand letter, 111 Veterans did not comply. Mr. Feil only complied two months later after forcing Stewart's Chief Executive Officer to personally call him, say he was "scared" of him, and apologize for a perceived slight from four years ago.

In April 2022, Stewart decided to sell Heritage Plaza. 111 Veterans expressed interest in purchasing the Building and entered into discussions with Stewart. On May 2, 2022, 111 Veterans executed a standard Confidentiality Agreement whereby 111 Veterans agreed to receive and keep confidential certain information for purposes of a potential purchase. Subject to the Confidentiality Agreement, Stewart provided 111 Veterans with sensitive materials including but not limited to information that Stewart's loan on the Building was set to expire in April 2023 and a purchasing offering memorandum, which contained Stewart's "rent rolls." These rent rolls set forth tenancy occupancy dates, minimum rent charges, minimum rent per square foot, and expense bases for all of the Stewart's tenants. Such data is not public and is "the golden information that leasing brokers would like to have" when soliciting tenants. On May 10, 2022, 111 Veterans decided that Stewart's asking price was too high, but focused on Stewart's April 2023 deadline to refinance its Building loan. The Feil Organization's Chief Financial Officer suggested to Mr. Feil that Stewart could have a serious problem refinancing the loan—particularly if the Building's tenant occupancy decreased. Mr. Feil saw this as his opportunity to hurt his competitor, prevent Stewart from refinancing its loan, and potentially allow Mr. Feil to buy the loan "for pennies on the dollar" and foreclose on the Building.

The very next day, and on May 11, 2022, emailed Stewart's confidential rent rolls to the Feil Organization's real estate broker, Michael Siegel at Corporate Realty, with instructions to "[g]o get these tenants" for Feil buildings—a clear violation of the Confidentiality Agreement.

- 7 -

Corporate Realty analyzed Heritage Plaza's rent rolls, created a list of tenants to target, and cautioned this was "super confidential."  Corporate Realty also determined that Heritage Plaza's rent "rates are going to be hard to compete with at Galleria and Lakeway."  On May 12, 2022, Corporate Realty advised Mr. Feil that the rent rolls showed that Stewart offers tenants low expenses and "flat rate deals. Good for the tenants but not good when you are trying to steal someone. Notwithstanding all this, we will take this info and do our best to get every tenant interested in one of our buildings."  Mr. Feil immediately pressured Corporate Realty to "Stop all your bs and go make some deals!! The[ir] mortgage is due next year… U know what I expect."  Corporate Realty's goal was "to steal tenants from Heritage Plaza for Mr. Feil."  At this time, the Feil Organization emailed Heritage Plaza's rent rolls to its mortgage broker—another violation of the Confidentiality Agreement—with instructions: "The building is encumbered by a CMBS loan which comes due in April 2023. I suspect the seller will not be able to refinance. We would like to track this loan to see if there is an opportunity to buy it from the CMBS trust for pennies on the dollar."

With this plan in motion, 111 Veterans notified Stewart on June 1, 2022 that it was no longer interested in purchasing the Building.  Meanwhile, internally, it continued to make plans to take ownership of the Building: "think about the office market, if you removed Heritage from the competition, you control the Class A market. Reduce competition.  Can maybe drive rents further in the market place and make [Heritage Plaza a] first-class residential building."  Corporate Realty wanted Mr. Feil to "truly control the Class A portion of this market," and Mr. Feil kept the pressure on Corporate Realty to steal Heritage Plaza tenants.  Corporate Realty continually obliged, while also acknowledging the impropriety of the scheme: "We have to be careful how we use the information we were given in the Offering Memorandum[.]"

#5446973v1

In early 2023, the Feil Organization became frustrated with Corporate Realty's lack of progress in stealing tenants: "Didn't we see the rent roll on this property months ago? Not sure how you 'missed some.' King Siegel [Corporate Realty] of the market doesn't know all." Meanwhile, it pretended to renew interest in purchasing the Building, and Mr. Feil asked Stewart's real estate agent about the Building's insurance and for a complete copy of the policy.  Mr. Feil stated he was interested in this information only as purchaser and not Ground Lessor.  Stewart provided the policy, which showed that Stewart's insurance expenses on Heritage Plaza were in line with all other commercial buildings in the area—although lower than Mr. Feil's insurance expenses on Lakeway and Galleria.  Corporate Realty advised the Feil Organization that this was a problem with Lakeway and Galleria—not Heritage Plaza: "the amount you are paying at Lakeway and Galleria, especially in insurance, is out of line compared to the other [15 Metairie and CBD Class A] buildings" and that the other buildings, including Heritage Plaza, are "insured appropriately and adhere to their underlying loan covenants."

At this same time in early 2023, 111 Veterans asked its insurance broker, HUB International, to find and evaluate insurance coverage for Heritage Plaza. 111 Veterans asked HUB International to obtain pricing quotes for the same single-building $40 million insurance coverage that Stewart had in place on the Building – seemingly in the event that 111 Veterans obtained the Building and wanted to insure it for the same coverage.  HUB International was only able to obtain quotes from insurers that it would cost $1.25 million to insure the Building up to $10 million or $2.5 million to insure the Building up to $25 million. In either scenario, 111 Veterans would have to find and pay for additional layers of coverage up to the $40 million that Stewart had in place— which insurers were not inclined to offer in such a risk-prone area and for which HUB International could not even obtain quotes.  HUB International also determined that it was impossible for any

- 9 -

insured to obtain a $10,000 or less deductible—and 111 Veterans and its insurance consultant, AMS Risk Management and Consulting, Inc. ("AMS Consulting"), agreed.  Neither 111 Veterans, HUB International, nor AMS Consulting ever found insurance coverage to even match Stewart's $40 million.

Despite receiving this information from its insurance broker, 111 Veterans placed Stewart in default of the Ground Lease on March 16, 2023 for failing to maintain $110,700,000 of casualty insurance (allegedly the amount equal to the replacement cost of the Building less actual depreciation of 10%) with a deductible of $10,000 or less.  The default letter stated that Stewart had insufficient casualty insurance coverage of only $40,000,000 with a deductible over $10,000. This was the first time since 111 Veterans assumed the ground lease in 2017 that it had ever raised these issues or alleged that the Building's insurance was inadequate. 111 Veterans provided no support for the figures cited in its default letter, but claimed that its insurance consultant and broker had determined that the replacement cost of the Building totaled $123,000,000, with a minimal depreciation of only 10%, thereby requiring Stewart to obtain $110,700,000 of casualty insurance.

111 Veterans knew that its demand for $110,700,000 of casualty insurance with a deductible of $10,000 or less was unreasonable and even impossible.

- 111 Veterans, its insurance broker, its insurance consultant, and its litigation insurance expert admit that a $10,000 or less deductible was and is impossible in this market;

- It was and is impossible to obtain $110,700,000 of wind and/or named storm insurance on a single building in this area and even 111 Veterans' litigation insurance expert has never heard or seen of such coverage;

- 111 Veterans knew or should have known it was impossible because, before defaulting Stewart in March 2023, 111 Veterans tried to obtain insurance quotes to match Stewart's existing $40 million coverage on the Building.  Despite diligent outreach to insurers, 111 Veterans and its insurance broker were not even able to get underwriter quotes matching Stewart's $40 million coverage—they were only able to obtain quotes that it would cost $1.25 million to insure the Building up to

- 10 -

$10 million or $2.5 million to insure the Building up to $25 million—with no additional layers;

- 111 Veterans knew or should have known it was impossible because the Feil Organization's only comparable property in the area (the Lakeway Center comprised of three buildings known as Lakeway I, II, and III) is only insured for $50 million for all wind, named storm, and/or flood damage spread across all three commercial buildings;

The next day, on March 17, 2023, 111 Veterans notified Corporate Realty of the default notice and again fixated on Stewart's loan due in April 2023. Mr. Feil advised Corporate Realty that its demand for increased insurance "will cost" Stewart, which will be "another cost to his tenants." He wanted to hurt Stewart and also level the competitive market for Mr. Feil's other building which charge higher costs and rent to tenants.

After receiving the default letter and under threat of eviction from its own Building, Stewart contacted its insurance broker, Arthur J. Gallagher & Co., to inquire as to whether it was possible for Stewart to comply with the outrageous demand. Stewart's insurance broker contacted multiple underwriters who would not even provide quotes for such an outrageous figure. Such coverage was and is impossible to obtain. This was obvious given the state of the insurance market. Years of hurricanes in the Gulf Coast, particularly 2021's Hurricane Ida, have "hardened" the insurance market, and underwriters have cutback coverage, raised premiums, and even stopped providing levels of coverage.

Unable to obtain additional property insurance through traditional carriers, Stewart turned to the captive insurance market to try to temporarily cover the difference and avoid default and eviction At great expense, Stewart managed to obtain a captive insurance policy from Hartwell Insurance Company ("Hartwell Insurance") with up to $110,700,000 of casualty coverage – to layer on top of its existing coverage ($40 million coverage) and supplemental parametric wind coverage ($3 million). Nevertheless, 111 Veterans insisted Stewart was still in default and changed

its reasoning that Stewart was now in default because the captive policy was improper "self-insurance"—even though the Ground Lease does not prohibit "self-insurance" and the Feil Organization uses captive insurance in its own business.  Internally, 111 Veterans articulated the motive behind its scheme: to obtain Heritage Plaza from Stewart at no cost.  On June 2, 2022, Mr. Feil informed Corporate Realty that it sought "a decree that the ground lease has been terminated and that the improvements [the Building] belong to 111 Veterans."  To prevent a hostile takeover of its own Building, Stewart filed this lawsuit.

As a result of 111 Veterans' actions, Stewart has incurred damages totaling $9,546,954.  Stewart's damages can be broken down to three different categories.  First, Stewart incurred damages as a direct result of 111 Veterans' improper default and unfair scheme, including broker fees and over $1 million spent to obtain the captive policy and prevent eviction.  Second, Stewart incurred lost profits as 111 Veterans tried to steal two tenants—one successfully as the tenant recently moved to a Feil-owned building and a second tenant was on the verge of moving before forcing Stewart to lower its rent price both in April 2024—which has resulted in lost profits for Stewart.   Third, 111 Veterans' scheme has caused the Building to become unmarketable to interested buyers.  While many parties have expressed interest in purchasing the Building, no purchaser can or will buy it while the Ground Lessor tries to seize the Building in bad faith— which has caused loss to Stewart.   Stewart is also entitled to attorneys' fees, costs, and treble damages under LUTPA.

### B.      DEFENDANT / PLAINTIFF-IN-COUNTERCLAIM

This case centers on the interpretation and application of the insurance provisions of a ground lease. Stewart Development, LLC ("Stewart") is the lessee under that ground lease and, as ground lessee, owns the Heritage Plaza office building and garage.  111 Veterans Boulevard, LLC

("111 Veterans") acquired the leased property in 2017 and stepped in the shoes of the ground lessor. The twist is that affiliates of 111 Veterans own both the Galleria and Lakeway Center, Heritage Plaza's sole competitors in the Metairie Class A office market. From that twist, Stewart spins a spurious tale of an anticompetitive plot that is designed to distracts from the contractual issues that lie at the heart of this litigation.

The ground lease dates from October 3, 1980, when Frank B. Stewart, Jr. entered into a 99-year lease for property in Metairie now bearing the municipal address of 111 Veterans Boulevard. Heritage Plaza was built on the ground lease site in the early 1980's and is currently owned by Stewart Development, LLC, which was assigned the ground lessee's rights on April 10, 2003. In connection with that assignment, the Fourth Amendment to Ground Lease was executed, Section 3(g) of which addresses the insurance that Stewart is required to maintain on Heritage Plaza. Section 3(g) provides in relevant part as follows:

> Whichever party is required to maintain fire insurance on the improvements on the Demised Premises shall keep same insured with financially sound and reputable insurance companies against loss or damage by fire, theft, lightning, windstorm, hail, explosion, riot and civil commotion, aircraft and vehicles, and smoke and such other casualties as are presently included in the so-called Extended Coverage Endorsement; and flood, if reasonably obtainable, in amounts sufficient to prevent the insured from becoming a co-insurer within the terms of the insurance policies covering such risks, but in any event in an amount not less than 100% of the actual replacement cost of such improvements (exclusive of excavation and foundation costs and costs of underground tanks, conduits, pipes, pilings and other similar underground items), less the actual physical depreciation thereof, and with not more than a $10,000 deductible from the loss payable for any particular occurrence.

The land that is the subject of the ground lease was sold on November 7, 2017 to 111 Veterans, which is one of a set of related companies collectively known as the Feil Organization ("Feil"). Feil companies own and manage commercial and residential properties in several U.S.

- 13 -

metropolitan areas, including New Orleans.  Feil's New Orleans properties included Heritage Plaza's main competitors in the Metairie Class A office market, the Galleria building (acquired by Feil in 2005) and the three Lakeway buildings (acquired by Feil in 2013).  Stewart was unwilling to provide 111 Veterans with any information about Heritage Plaza in connection with the 2017 sale of the land, going so far as to refuse to sign an estoppel letter that is commonly requested of tenants when property subject to a lease is conveyed.  In particular, prior to November 7, 2017, Stewart provided 111 Veterans with no information about the insurance then in place on Heritage Plaza.

Over the succeeding several years, the only information that 111 Veterans received about Heritage Plaza's property coverage came from Stewart's insurance broker, which transmitted annual certificate of insurance addressed to Mike Campbell, then a property manager for Feil based in Metairie.  The insurance limits on the certificates transmitted to Feil for several years running after the 2017 land sale reflected that there was $40,000,000 in replacement cost coverage on Heritage Plaza, an amount consistent with certificates issued by Stewart's insurance broker going back to 2013 and with statements of value that the broker had provided beginning in 2013 to the insurance underwriters from which coverage was being sought. For the insurance renewal at Heritage Plaza that went into effect on May 29, 2021, Stewart's broker provided the underwriter with a statement of value reflecting an increase in the replacement cost of the building to $62,952,212, the first such increase in eight years.  The insurance limits for Heritage Plaza rose for the policy that went into effect on May 29, 2021 as well, with the certificate of insurance provided to 111 Veterans for the 2021 insurance renewal showing an increase in Heritage Plaza's coverage to the same amount, $62,952,212.  In short, for the entire period from May 29, 2013 to May 29, 2022, Stewart insured Heritage Plaza for "100% of the actual replacement cost of such

- 14 -

improvements" as reflected on the statements of value provided to its underwriters.  There was no indication in any documents provided to 111 Veterans during this time that the coverage limits at Heritage Plaza were in any way inconsistent with the requirements of Section 3(g).

The property insurance coverage limits for Heritage Plaza did not diverge from the building's replacement cost valuation in the statements of value until the policy that went into effect on May 29, 2022.  The certificate of insurance for that policy listed the insurable value of Heritage Plaza as $93,256,694, but it showed the loss limit as only $40,000,000.  Further, although not reflected on the certificate, the May 29, 2022 policy had a $10,000,000 sublimit for windstorm damage.  In light of the obvious shortfall in coverage under this policy, 111 Veterans transmitted a default notice to Stewart on March 16, 2023, during the policy period.

Stewart has responded to the default notice in two ways.  First, it has denied that it was in default, asserting that Section 3(g) requires insurance for the building's full replacement cost less actual physical depreciation only if that level of coverage is "reasonably obtainable," which Stewart contends it was not.  Second, Stewart further has alleged that the default notice was part of a plot by 111 Veterans to disable Heritage Plaza as a competitor and allow Feil to monopolize the Metairie Class A market.  The first argument is belied by Stewart's performance under Section 3(g) between May 29, 2013 and May 28, 2022.  The second is inconsistent with the facts.

In an earlier ruling, Judge Africk held that the language in Section 3(g) is ambiguous, specifically that it is unclear from the language of Section 3(g) whether the phrase "if reasonable obtainable" applies to Stewart's obligation to maintain non-flood property insurance at 100% of Heritage Plaza's replacement cost less physical depreciation.  Given the lack of any contemporaneous evidence concerning the intent of the parties at the time of the 2003 lease amendment, the key "is to examine the method in which the contract is performed, particularly if

- 15 -

performance has been consistent for many years." *Gulf Engineering Co., LLC v. Dow Chemical Co.*, 334 F.Supp. 3d 804, 808 (M.D. La. 2018), *quoting from WH Holdings, LLC v. ACE American Ins. Co.*, 2013-Westlaw 2286107, *3 (E.D. La. May 23, 2013).  Stewart's own performance under Section 3(g) between May 29, 2013 and May 29, 2022 under Section 3(g), combined with the statements of value that its insurance broker provided to the underwriters during that period, demonstrates that it believed it was obligated unconditionally to provide non-flood property insurance at 100% of Heritage Plaza's stated replacement value (except for certain underground items) less physical depreciation. Moreover, the evidence to be presented by 111 Veterans at trial, particularly the coverage obtained by Feil for its comparable properties at Lakeway, will demonstrate that as of March 16, 2023, full replacement value coverage was available for non-wind risks, also known as "all other perils," and that at least $30,000,000 to $50,000,000 of coverage for windstorm risk was available.  Stewart's coverage beginning in May 29, 2022 fell well short of those amounts.  Moreover, Stewart's attempt to plug the coverage gap by a form of self-insurance known as a "captive cell" policy does not comply with Section 3(g)'s requirement that the insurance coverage on Heritage Plaza be provided by a "financially sound and reputable" insurer.  Thus, 111 Veterans' default notice of March 16, 2023 was well-founded.

What is not well-founded is Stewart's unfair trade practices claim.  As noted earlier, other companies within Feil own Heritage Plaza's primary competitors, the Galleria and Lakeway Center, competition that stretches back to the 1980's, when both Galleria and Lakeway were owned by others.  When Stewart decided in April 2022 that it wished to sell Heritage Plaza, it initially approached Feil to determine if it, since it controlled Heritage Plaza's primary Metairie rivals, would be interested in purchasing the building.  Feil's CFO, Eric Lowenstein, analyzed the marketing documents provided by Stewart and quickly concluded that the building was worth far

less than the $40,000,000 that Stewart appeared to be seeking, that there were many short term leases at Heritage Plaza that increased the level of risk for the property, and that the proposed deal structure was unworkable. Accordingly, on June 1, 2022, Lowenstein informed Stewart that Feil was not interested in buying the building.

In the fall of 2022, others within Feil investigated whether a conversion of Heritage Plaza to residential use might warrant another look at the building. It quickly became clear, however, that the cost of such a conversion was far too high to be feasible, and Feil dropped the idea.

Having failed in its initial negotiations with Feil on a sale of Heritage Plaza, Stewart engaged a Dallas-based real estate broker named Evan Stone to market the building to the general public. Stone contacted Jeffrey Feil in December 2022 about the renewed sales effort, and Mr. Feil agreed to Stone's request to take another look at the building. Over the ensuing weeks, Feil's representatives closely reviewed the financial information about Heritage Plaza made available to them by Stone, conducted a physical inspection of the building to determine its condition and the extent of deferred maintenance, investigated the cost of insuring Heritage Plaza, and assessed all of this information in light of the difficult state of the commercial office building market. By mid-February 2023, Feil again concluded that Heritage Plaza was greatly overpriced and decided not to pursue the property further. In the meantime, its financial analysis had highlighted the discrepancy between the insurance requirements of Section 3(g) of the Fourth Amendment to Ground Lease and the amount of insurance actually in place at Heritage Plaza beginning on May 29, 2022. Given the shortfall in coverage, Jeffrey Feil transmitted to Stewart the default notice dated March 16, 2023 that triggered this litigation.

Stewart's efforts through Evan Stone to market Heritage Plaza to other potential buyers in 2023 were completely unsuccessful. In communications to Stewart, Stone commented that the

- 17 -

building's location and age, together with the challenges in the market for office buildings in the post-pandemic era, made it difficult to generate interest in the property. He particularly questioned Stewart's valuation of the building, ultimately concluding that a "fair offer" for the property would be $24,500,000, far below Stewart's goal of a sales price of at least $35,000,000.

During the entire time that Stewart was trying to sell the building, Heritage Plaza continued to compete vigorously with Galleria and Lakeway for tenants. One longtime Lakeway tenant, the MAPS Mediation firm, recently departed Lakeway for Heritage Plaza. Conversely, a longtime Heritage Plaza tenant, the Carr Riggs accounting firm, left for Lakeway earlier this year. There is nothing untoward about any of this, as intense competition for tenants is normal, particularly during a period of declining occupancy in the office market.

None of these events reflect a plot of any sort on the part of 111 Veterans and its affiliates to damage Heritage Plaza, save in the sense that competition among office buildings for tenants can be considered improper or that a well-founded demand that Stewart comply with the ground lease can be considered improper. Stewart, initially on its own and subsequently through its real estate broker, approached Feil twice about a possible sale of Heritage Plaza. Feil, after good faith consideration of those approaches, ultimately declined both times for valid business reasons. The parties have continued to compete for tenants, as they have been doing for many years, with the result being a wash. And while Stewart points to violations of a confidentiality agreement executed by Feil in connection with the initial sales approach by Stewart in the spring of 2022, there is no indication that there was any damage caused to Stewart thereby or that those violations were part of some broader plot to eliminate a competitor.

Finally, Stewart seeks millions of dollars in damages allegedly resulted from a delay in the sale of Heritage Plaza that it attributes to the March 16, 2023 default letter. In fact, the building

- 18 -

has failed to sell not because of the parties' dispute over insurance coverage, but because Stewart was attempting to sell an overpriced building into a very difficult market for office buildings, as its own real estate broker as acknowledged. Moreover, its expert's damage methodology is flawed in a number of respects that will be covered in more detail at trial. If anything, Stewart has benefitted from the delay, as it continues to generate rents in excess of operating expenses while waiting for the office building market to turn around.

7. **UNCONTESTED MATERIAL FACTS:**

1. Stewart built and owns the Class A commercial office building known as Heritage Plaza located at 111 Veterans Memorial Blvd, Metairie, Louisiana 70005. The building was completed in the early 1980's.

2. Since 1980, Stewart has leased the land on which Heritage Plaza sits pursuant to a Ground Lease.

3. On November 2, 2017, 111 Veterans acquired the land on which Heritage Plaza sits and became the ground lessor under the Ground Lease.

4. 111 Veterans is one of a set of affiliated companies that operate under the trade name of The Feil Organization. Jeffrey Feil is the ultimate decision maker for companies within The Feil Organization.

5. The only Class A commercial office buildings in Metairie, besides Heritage Plaza, are Galleria and the three-building complex known as Lakeway Center. Galleria and Lakeway Center were completed in the 1980's and have been direct competitors of Heritage Plaza since their completion.

#5446973v1

6.    Companies within The Feil Organization acquired Galleria on February 1, 2005 and all of Lakeway Center, except for a hotel unit in Lakeway 3, on June 11, 2013, and they continue to own both buildings.

7.    In 2003, Stewart obtained a commercial loan backed by the Building.  At the same time that loan was closed, the then-owner of the land and Stewart entered into the Fourth Amendment of Ground Lease.

8.    On March 18, 2013, Julius J. Gasparre, MAI, with CBRE, Inc.-Valuation & Advisory Services transmitted an appraisal report to Dolly Laubach of Cantor Commercial Real Estate Co., L.P. that expressed the conclusion that Heritage Plaza had a market value of $40.7 million as of March 11, 2013.

9.    As Ground Lessor, 111 Veterans owns the ground and has no ownership interest in the Building.

10.    On November 2, 2017, 111 Veterans Boulevard and the prior ground lessor, Capital One, N.A as Trustee of the Margaret Lauer Charitable Trust, executed an Assignment and Assumption of the Lease.  The Assignment and Assumption of the Lease is the best evidence of its contents.

11.    On February 22, 2018, Jason Provenzano at HUB International, 111 Veterans' insurance broker, ran a report estimating the replacement cost of the Building. The report is the best evidence of its contents.

12.    Through present Stewart has maintained insurance on the Building. The policies and certificates of insurance are the best evidence of their contents.

- 20 -

13. For each year following its purchase of the land other than 2018, 111 Veterans received a copy of a certificate of insurance for the Building. The certificates of insurance are the best evidence of their contents.

14. At no point from its acquisition of the land until March 16, 2023 did 111 Veterans transmit to Stewart any formal objection to the insurance on the Building.

15. Effective as of May 1, 2022, Stewart and The Feil Organization executed a Confidentiality Agreement. The Confidentiality Agreement is the best evidence of its contents.

16. Following execution of the Confidentiality Agreement, Stewart provided 111 Veterans with information and materials concerning Heritage Plaza, including but not limited to a Purchase Opportunity Summary that contained Stewart's "rent roll" as of April 1, 2022. These documents are the best evidence of their contents.

17. On May 11, 2022, Mr. Feil e-mailed Stewart's rent rolls to Michael Siegel at Corporate Realty, the brokerage firm that handled leasing for the Feil Organization's commercial properties in the New Orleans area. The email is the best evidence of its contents.

18. On June 1, 2022, Eric Lowenstein of the Feil Organization sent an email to Mamal Motahari, the entire text of which provides, "Hi Mamal. I spoke with Mr. Feil. At the current price and proposed deal structure, he has declined. Thank you for your time."

19. On January 15, 2023, Jeffrey Feil sent an email to Evan Stone discussing the insurance at Heritage Plaza and requesting a copy of Stewart's insurance policy. The email is the best evidence of its contents.

- 21 -

20.    On or around January 20, 2023, 111 Veterans asked its insurance broker, HUB International, to investigate the cost to insure the Building.

21.    On March 16, 2023, 111 Veterans placed Stewart in default of the Ground Lease for breach of Section 3(g). The default letter is the best evidence of its contents.

22.    After receiving the default letter, Stewart contacted its insurance broker, Anderson Baker at Arthur J. Gallagher & Co., concerning the March 16, 2023 default notice.

23.    On or around May 15, 2023, Stewart obtained a captive cell property insurance policy from Hartwell Insurance Company with up to $110,700,000 of casualty coverage. The captive policy is the best evidence of its contents.

24.    On June 14, 2023, 111 Veterans sent a letter to Stewart stating that Stewart was still in default. The letter is the best evidence of its contents.

25.    In April 2024, Carr, Riggs & Ingram's lease with Heritage Plaza expired, and Carr, Riggs & Ingram moved from Heritage Plaza to Lakeway.

**8.    <u>CONTESTED ISSUES OF FACT:</u>**

1.    The availability of property and flood insurance coverage for commercial buildings in the New Orleans area during the period when the Fourth Amendment of Ground Lease was executed.

2.    The facts and circumstances concerning the execution of the Fourth Amendment of Ground Lease.

3.    Whether Stewart's 2003 mortgage lender required the Ground Lease to be amended to include Section 3(g) of the Fourth Amendment of Ground Lease.

4.    Whether there were any discussions among the lender and the parties to the Fourth Amendment of Ground Lease concerning flood insurance coverage on Heritage

#5446973v1

Plaza.

5.      Whether, on or around April 1, 2013, Stewart's lender agreed to accept $40 million of property insurance coverage.

6.      Whether any insurance proceeds with respect to Heritage Plaza have or ever will flow to the ground lessor.

7.      The representations made from 2013 to 2023 by Stewart's insurance broker to the insurance underwriters from which it was seeking coverage for Heritage Plaza concerning the replacement value of Heritage Plaza.

8.      The information provided by Stewart to 111 Veterans from 2017 to 2023 concerning the property insurance coverage at Heritage Plaza.

9.      The manner in which the parties to the ground lease performed their obligations under Section 3(g) of the Ground Lease between 2013 and 2023.

10.     What the conduct of the parties to the Ground Lease between 2013 and 2022 demonstrates concerning their understanding of the requirements of Section 3(g) of the Ground Lease.

11.     The nature and extent of the competition among the Class A office buildings in Metairie.

12.     The actions, if any, by 111 Veterans to obtain a competitive advantage over Stewart.

13.     The information maintained by Corporate Realty and its agents concerning the leasing of space at the Class A office buildings in the New Orleans area.

14.     The facts and circumstances leading to the decision by Carr Riggs to move from Heritage Plaza to Lakeway.

#5446973v1

15.  The facts and circumstances leading to the decision by MAPS to move from Lakeway to Heritage Plaza.

16.  In October 2023, MAPS's lease with Lakeway expired, and MAPS moved to Heritage Plaza.

17.  The facts and circumstances of the negotiations by both Lakeway and Heritage Plaza with Audubon Engineering.

18.  Whether Feil misused any confidential information of Stewart in its negotiations with Carr Riggs and Audubon.

19.  The reasons why 111 Veterans decided not to pursue the purchase of Heritage Plaza following the discussions between the parties in the spring of 2022.

20.  The reasons why 111 Veterans, during the fall of 2022, considered a possible residential conversion of Heritage Plaza and the reasons that conversion was not pursued.

21.  The facts and circumstances concerning the decision to renew discussions in January 2023 concerning a possible purchase of Heritage Plaza

22.  The reasons why 111 Veterans decided in February 2023 not to pursue further negotiations with Evan Stone concerning the purchase of Heritage Plaza.

23.  The availability and pricing of property insurance for Class A commercial office buildings in Metairie from 2021 to date.

24.  Whether the amount of property insurance Stewart had in place on Heritage Plaza as of March 16, 2023 complied with its obligations under Section 3(g).

25.  Whether 111 Veterans had a reasonable basis for transmitting the default letter of March 16, 2023.

- 24 -

26. The availability of all types of casualty insurance coverage for commercial buildings in the New Orleans area on March 16, 2023 and through present.

27. Whether the underwriters contacted by Stewart's insurance broker after March 16, 2023 refused to provide him with quotes for additional insurance.

28. The reasons why Stewarts's efforts during 2023 to sell Heritage Plaza were unsuccessful.

29. The facts and circumstances surrounding Stewart's efforts to obtain and maintain the captive cell policy and how the captive cell policy functions.

30. Whether the captive cell policy obtained by Stewart in May 2023 transferred the risk of casualty loss from Stewart to a third party.

31. Whether the captive cell policy obtained by Stewart in May 2023 cured the defaults asserted in the March 16, 2023 letter.

32. The amount of damages, if any, that Stewart can establish pursuant to its bad faith breach of contract and/or LUTPA claims.

33. The amount of reasonable attorneys' fees, if any, that Stewart is entitled to.

34. The amount of costs, if any, that Stewart is entitled to.

**9.** **CONTESTED ISSUES OF LAW:**

1. Whether Stewart is entitled to the declaratory judgments alleged in its Complaint.

2. Whether 111 Veterans is entitled to the declaratory judgments alleged in its Counterclaim.

3. Whether the phrase "if reasonably obtainable" in Section 3(g) of the Fourth Amendment of the Ground Lease modifies all types of casualties listed, or just flood.

- 25 -

4.    If the phrase "if reasonably obtainable" applies to all types of casualties listed, whether the replacement cost and deductible requirements set forth in Section 3(g) were reasonably obtainable on or around March 16, 2023.

5.    If the phrase "if reasonably obtainable" applies to all types of casualties listed, whether coverage for "all other perils" was reasonably obtainable on or about March 16, 2023 at limits equal to 100% of the actual replacement cost of Heritage Plaza (exclusive of the items delineated in Section 3(g)) less actual physical depreciation or, in the alternative, whether coverage for all other perils was reasonably obtainable on or about March 16, 2023 at limits higher than those actually obtained by Stewart.

6.    If the phrase "if reasonably obtainable" applies to all types of casualties listed, whether coverage for damage caused by windstorms was reasonably obtainable on or about March 16, 2023 at limits higher than those actually obtained by Stewart.

7.    If the phrase "if reasonably obtainable" applies only to flood coverage, whether it was possible to obtain coverage for "all other perils" on or about March 16, 2023 at limits equal to 100% of the actual replacement cost of Heritage Plaza (exclusive of the items delineated in Section 3(g)) less actual physical depreciation or, in the alternative,  whether it was possible to obtain coverage for all other perils on or about March 16, 2023 at limits higher than those actually obtained by Stewart.

8.    If the phrase "if reasonably obtainable" applies only to flood coverage, whether it was possible to obtain coverage for windstorm damage on or about March 16, 2023 at limits higher than those actually obtained by Stewart.

9.    Whether the replacement cost and deductible requirements set forth in Section 3(g)

#5446973v1

were impossible to obtain on or around March 16, 2023.

10.    Whether, assuming that it was impossible on or about March 16, 2023, to obtain coverage for all other perils at the full limits called for by Section 3(g), Stewart was nonetheless responsible to obtain the most coverage possible for all other perils.

11.    Whether, assuming that it was impossible on or about March 16, 2023, to obtain coverage for windstorms at the full limits called for by Section 3(g), Stewart was nonetheless responsible to obtain the most coverage possible for windstorms.

12.    Solely in the alternative, whether the parties modified the requirements of Section 3(g) of the Ground Lease through their course of conduct.

13.    Whether Stewart was in breach of the Ground Lease on or about March 16, 2023.

14.    Whether 111 Veterans breached the Ground Lease by improperly defaulting Stewart on or around March 16, 2023.

15.    Whether Stewart can establish damages for breach of contract pursuant to Louisiana law.

16.    Whether 111 Veterans breached the Ground Lease in bad faith by improperly defaulting Stewart on or around March 16, 2023.

17.    Whether Stewart can establish damages for bad faith breach of contract pursuant to Louisiana law.

18.    Whether Stewart is entitled to attorneys' fees and costs for bad faith breach of contract pursuant to Louisiana law.

19.    Whether 111 Veterans engaged in any actions in violation of LUTPA.

20.    Whether Stewart can establish ascertainable loss or damages for any actions in violation of LUTPA.

- 27 -

#5446973v1

21.     Whether Stewart is entitled to treble damages under the LUTPA.

22.     Whether Stewart is entitled to attorneys' fees and costs under the LUTPA.

## 10.     EXHIBITS TO BE INTRODUCED AT TRIAL:

### A.     Stewart's Exhibit List

| Exhibit No. | Description | Bates |
|---|---|---|
| 1. | The parties' discovery responses | |
| 2. | All Exhibits attached to Stewart's Motion for Summary Judgment on Liability, Reply Memorandum, and Opposition to 111 Veterans' Motion for Partial Summary Judgment | |
| 3. | Photographs of the Lakeway Center | |
| 4. | Photographs of the Galleria | |
| 5. | Photographs of Heritage Plaza | |
| 6. | Sample Co-Insurance Clauses | |
| 7. | Letter from Jeff Landry to 111 Veterans Boulevard, LLC ("111 Veterans") dated 6/27/2003 re: Notice of LUTPA Complaint | |
| 8. | Certificate of Insurance evidencing property coverage for Heritage Plaza from May 29, 2018 – May 29, 2019 | Stewart_001879-001880 |
| 9. | Email Chain between W. VanHorn and M. Motahari with attachments dated April 1, 2013 | Stewart_005877-005885 |
| 10. | Heritage Plaza 2024 Insurance renewal certificates, documents, and invoices | Stewart_009121-009194 |
| 11. | Email from E. Stone to M. Motahari dated August 11, 2022 | Stewart_008813-008814 |
| 12. | Heritage Plaza Status Reports | Stewart_008815-008838 |
| 13. | CRI Notice of Nonrenewal | Stewart_008985-008988 |
| 14. | Confidentiality Agreement between Stewart and 111 Veterans dated May 1, 2022 | 111VETS-001574-001580 |
| 15. | Email Chain from M. Motahari to C. Wharton May 5, 2022 | Stewart_006192-006199 |
| 16. | Emal from E. Lowenstein to M. Motahari dated June 1, 2022 | Stewart_006461-006467 |
| 17. | Email from J. Feil to E. Stone dated Jan. 15, 2023 | Stewart_006150-006151 |

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| 18. | 2023 Captive Policy with Addendum No. 1 | Stewart_008958-008967, 007413-007416 |
| 19. | Letter from C. Stern to U.S. Bank National Association dated April 19, 2023 re: default | |
| 20. | Any Heritage Plaza Property Insurance Policies and Certificates produced by Arthur J. Gallaher Co. | |
| 21. | Emails between J. Feil and C. Wharton dated Jan. 2021 re: variance request | 111VETS-000768-000769 |
| 22. | Emails between B. Palumbo and C. Wharton dated Jan. 2021 re: variance request | 111VETS-000770-000775,000940-001105, 001281-001297, 001388-001423, 001436-001438 |
| 23. | Email from E. Lowenstein to J. Feil dated May 10, 2022 | 111VETS-001693 |
| 24. | Email from D. Longo to J. Feil dated 7/26/22 | 111VETS-001858-002018 |
| 25. | Emails between B. Feil and J. Feil dated Oct. 14, 2022 | 111VETS-002329-002338 |
| 26. | Emails with J. Feil re: Historical TI Cost Analysis dated 12/12/2022 | 111VETS-002370-002379, 002433-002425 |
| 27. | Email from B. Palumbo to AMS dated 1/23/23 | 111VETS-003106 |
| 28. | Email from J. Feil to C. Wharton dated 2/1/23 | 111VETS-003697-003698 |
| 29. | All invoices for all depositions taken in the case, all Stewart expert invoices for work in this case, and all redacted invoices for Stewart's legal services and costs in this case | |
| 30. | Any document produced in discovery in this case by any party or third-party | |
| 31. | Any documents and items that may be discovered between now and the time of trial to which Stewart does not object. | |
| 32. | Any documents necessary for impeachment or rebuttal and other documents needed to address issues unanticipated or not yet raised | |
| 33. | Documents listed by 111 Veterans to which Stewart does not object. | |

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| | **111 Veterans' Corporate Rep. Depo. Exhibits** | |
| 34. | Ex. 2 – Ground Lease including Fourth Amendment | ECF No. 1-1 |
| 35. | Ex. 3 - Assignment and Assumption of Lease | |
| 36. | Ex. 4 - Evidence of Property Insurance dated 5/17/2011 | |
| 37. | Ex. 5 - Evidence of Property Insurance dated 5/30/2012 | |
| 38. | Ex. 6 - Evidence of Property Insurance dated 6/14/2013 | |
| 39. | Ex. 7 - Evidence of Property Insurance dated 5/20/2014 | |
| 40. | Ex. 8 - Evidence of Property Insurance dated 5/27/2015 | |
| 41. | Ex. 9 - Evidence of Property Insurance dated 5/27/2016 | |
| 42. | Ex. 10 - Certificate of Property Insurance dated 11/14/2017 | 111 VETS – 004420 |
| 43. | Ex. 11 - Evidence of Property Insurance dated 5/29/2019 | 111 VETS - 004421 |
| 44. | Ex. 12 - Evidence of Property Insurance dated 5/31/2022 | 111 VETS – 004422-4425 |
| 45. | Ex. 13 - Email from Jeffrey Feil to Colette Wharton dated 1/15/21 | 111 VETS-000760 |
| 46. | Ex. 14 - Email chain dated 2/25/21 | 111 VETS-001469-1471 |
| 47. | Ex. 15 - Email from Colette Wharton RE: Confidentiality Agreement | 111 VETS-001488-1496 |
| 48. | Ex. 16 - Email from Mamal Motahari RE: Confidentiality Agreement | 111 VETS-001571-1626 |
| 49. | Ex. 111 Veterans 17 - Email chain dated 5/3/22 | 111 VETS-001664-1668 |
| 50. | Ex. 18 - Email from Eric Lowenstein to Jeffrey Feil dated 5/10/22 | 111 VETS-001693 |
| 51. | Ex. 19 - Email from Eric Lowenstein to Jon Estreich dated 5/18/22 | 111 VETS-001714-1761 |
| 52. | Ex. 20 - Email chain dated 6/1/22 | 111 VETS 001769-1775 |
| 53. | Ex. 21 - Email from Jeffrey Feil to Eric Lowenstein dated 6/30/22 | 111 VETS-001843-1844 |
| 54. | Ex. 22 - Email from Jeffrey Feil to Evan Stone dated 8/11/22 | 111 VETS 002187-2190 |
| 55. | Ex. 23 - Email chain dated 10/14/22 | 111 VETS 002336-2338 |
| 56. | Ex. 24 - Email from Jeffrey Feil to Evan Stone dated 1/15/23 | 111 VETS 002537 |
| 57. | Ex. 25 - Email chain dated 1/15/23 | 111 VETS 002544 |
| 58. | Ex. 26 - Email from Brian Palumbo to AMS Consulting dated 1/23/23 | 111 VETS 003106 |
| 59. | Ex. 27 - Email from AMS Consulting to Brian Palumbo dated 1/24/23 | 111 VETS 003107-3109 |
| 60. | Ex. 28 - Email chain dated 1/24/23 | 111 VETS 003116-3126 |
| 61. | Ex. 29 - Email chain dated 1/24/23 | 111 VETS-003166 |
| 62. | Ex. 30 - Email chain dated 1/27/23 | 111 VETS-003394-3397 |
| 63. | Ex. 31 - Email chain dated 2/1/23 | 111 VETS-003701-3702 |

- 30 -

| Exhibit No. | Description | Bates |
|---|---|---|
| 64. | Ex. 32 - Email from Colette Wharton to Jeffrey Feil dated 2/7/23 | 111 VETS-003890-3908 |
| 65. | Ex. 33 - Email from AMS Consulting to Brian Palumbo dated 2/23/23 | 111 VETS-004076-4084 |
| 66. | Ex. 34 – Default Letter from Jeffrey Feil to Mohamad Motahari dated 3/16/23 | Stewart_003648-3649 |
| 67. | Ex. 35 - Email chain dated 3/17/23 | 111 VETS-004115 |
| 68. | Ex. 36 - Email chain dated 3/17/23 | 111 VETS-004123-4124 |
| 69. | Ex. 37 - Email chain dated 3/17/23 | 111 VETS-004127-4129 |
| 70. | Ex. 38 - Email chain dated 4/14/23 | 111 VETS-004152-4156 |
| 71. | Ex. 39 - Letter from Howell Crosby to The Feil Organization dated 3/31/23 | |
| 72. | Ex. 40 - Email chain dated 5/18/23 | 111 VETS-004238-4251 |
| 73. | Ex. 41 - Email chain 5/19/23 | 111 VETS-004298-4312 |
| 74. | Ex. 42 - Email from Darrell Longo to Jeffrey Feil dated 5/22/23 | 111 VETS-004333 |
| 75. | Ex. 43 - Email chain dated 6/12/23 | 111 VETS-004412-4413 |
| 76. | Ex. 44 - Letter from Charles Stern to Howell Crosby dated 6/14/23 | |
| 77. | Ex. 45 - Email from Jeffrey Feil to Colette Wharton dated 5/11/22 | 111 VETS-001699-1701 |
| 78. | Ex. 46 - Email chain dated 5/12/22 | 111 VETS-001702-1707 |
| 79. | Ex. 47 - Email chain dated 5/12/22 | 111 VETS-001708-1713 |
| 80. | Ex. 48 - Email chain dated 1/21/23 | 111 VETS-3100-3101 |
| 81. | Ex. 49 - Email from Julie Hill to Jeffrey Feil dated 2/1/23 | 111 VETS-003677-3686 |
| 82. | Ex. 50 - Spreadsheets | 111 VETS – 004494-004547 |
| 83. | Ex. 51 – 111 Veterans' Responses to Stewart's Interrogatories and Requests for Production | |
| | **Stewart Development Corporate Rep. Depo. Exhibits** | |
| 84. | Stewart 3  5/3/2023 Email | Stewart  008135-008137 |
| 85. | Stewart 4  5/3/2023 Amended and Restated Promissory Note | Stewart_007677-007680 |
| 86. | Stewart 5  5/3/2023 Second Amended and Restated Promissory Note | Stewart_007685-007688 |
| 87. | Stewart 6  9/5/2008 Email with Spreadsheet | Stewart_004381-004382 |
| 88. | Stewart 7  Excess Physical Damage Schedule Endorsement | Stewart_004525 |
| 89. | Stewart 8  5/26/2009 Email | Stewart_004241-004243 |
| 90. | Stewart 9  6/1/2009 Email with 5/9/2009 Certificates of Property Insurance | Stewart_005926-005932 |

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| 91. | Stewart 10  5/18/2011 Email with 5/17/2011 Certificate of Property Insurance | Stewart_003477-003480 |
| 92. | Stewart 11  6/15/2012 Certificate of Property Insurance | Stewart_003404-003405 |
| 93. | Stewart 12  3/6/2013 Email Chain | Stewart_004194-004200 |
| 94. | Stewart 13  Loan Agreement | Stewart_008021-008134 |
| 95. | Stewart 14  March 2013 Email Chain | Stewart_006036-006046 |
| 96. | Stewart 15  April 2013 Email Chain | Stewart_004169-004175 |
| 97. | Stewart 16  6/14/2013 Email with Proofs of Insurance | Stewart_004385-004388 |
| 98. | Stewart 18  2/25/2015 Email with Certificate of Property Insurance | Stewart_004236-004240 |
| 99. | Stewart 23  5/29/2020 Evidence of Property Insurance | Stewart_004003 |
| 100. | Stewart 24  4/14/2021 Email Chain | Stewart  008241-008252 |
| 101. | Stewart 25  May 2021 Email Chain | Stewart_003762-003766 |
| 102. | Stewart 26  June 2021 Email Chain | Stewart  003734-003737 |
| 103. | Stewart 27  Evidence of Property Insurance 1/17/23 | Stewart_003729 |
| 104. | Stewart 28  February 2022 Email Chain | Stewart_004568 |
| 105. | Stewart 29  4/5/2022 Email with Valuation Standard Report | Stewart_004294-004299 |
| 106. | Stewart 30  Air Catastrophe Risk Summary | Stewart_008197-008213 |
| 107. | Stewart 32  5/23/2022 Email Chain | Stewart_004394-004397 |
| 108. | Stewart 33  7/12/2022 Email with Attachments | Stewart_005597-005599 |
| 109. | Stewart 34  4/27/2022 Email with Attachment | Stewart_006340-006347 |
| 110. | Stewart 35  April-May 2022 Emails with Attachments | Stewart_006485-006540 |
| 111. | Stewart 36  April-May 2022 Emails | Stewart  006192-006199 |
| 112. | Stewart 37  May-June 2022 Emails | Stewart_006416-006423 |
| 113. | Stewart 38  1/10/2023 Email with Offering Memorandum | Stewart_006626-006720 |
| 114. | Stewart 39  1/15/2023 Email Chain | Stewart_006758-006759 |
| 115. | Stewart 40  January 2023 Email Chain | Stewart_006483-006484 |
| 116. | Stewart 41  3/9/2023 Email with Status Report Three | Stewart  008830-008838 |
| 117. | Stewart 43  3/31/2023 Email Chain | Stewart_006468-006469 |
| 118. | Stewart 44  5/30/2023 Letter with Attachments | |
| 119. | Stewart 45  May-June 2023 Email Chain with Attachments | Stewart_004138-004143 |
| 120. | Stewart 47  4/17/2023 Email Chain | Stewart  004167-004168 |
| 121. | Stewart 48  4/20/2023 Email Chain | Stewart_004214 |
| 122. | Stewart 49  4/21/2023 Email | Stewart_007478-007480 |
| 123. | Stewart 50  5/17/2023 Email with Attachments | Stewart_006056-006075 |
| | **Jason Provenzano Deposition Exhibits** | |
| 124. | 1 - CoreLogic Valuation Standard Report, 2/22/18 | HUB 98-100 |
| 125. | 2 - Email chain dated 1/20/23 | HUB 172, 184, 196, 208 |
| 126. | 3 - CoreLogic Valuation Standard Report, 1/20/23 | HUB 2-6, |
| 127. | 4 - Heritage Plaza Offering Memorandum | HUB 7-74 |

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| 128. | 5 - Selective Insurance Quote dated 3/3/23 | HUB 76 |
| 129. | 6 - Statement of Loss | HUB 77 |
| 130. | 7 - Evidence of Property Insurance 1/23/23 | HUB 80 |
| 131. | 8 - Loss Run dated 11/30/22 | HUB 82-87 |
| 132. | 9 - Evidence of Property Insurance 1/23/23 | HUB 88, |
| 133. | 10 - Email chain dated 1/20/23 | HUB 288-289 |
| 134. | 11 - Email chain dated 1/20/23 | HUB 366 |
| 135. | 12 - Email chain dated 1/24/23 | HUB 446-447 |
| 136. | 13 - Email chain dated 1/27/23 | HUB 454-460 |
| 137. | 14 - Email chain dated 1/30/23 | HUB 462-465 |
| 138. | 15 - Email chain dated 1/31/23 | HUB 467-472 |
| 139. | 16 - Email chain dated  1/31/23 | HUB 479-516 |
| 140. | 17 - Email chain dated 2/1/23 | HUB 525-531 |
| 141. | 18 - Email chain dated 2/1/23 | HUB 553-558 |
| 142. | 19 - Email chain dated 2/3/23 | HUB 629-632 |
| 143. | 20 - Email chain dated 2/3/23 | HUB 643-644 |
| 144. | 21 - Email chain dated 2/3/23 | HUB 710-711 |
| 145. | 22 - Email chain dated 2/3/23 | HUB 743-744 |
| 146. | 23 - Email chain dated 2/4/23 | HUB 809-810 |
| 147. | 24 - Email chain dated 2/6/23 | HUB 816-817 |
| 148. | 25 - Email chain dated 2/6/23 | HUB 856-858 |
| 149. | 26 - Email chain dated 2/6/23 | HUB 889-890 |
| 150. | 27 - Email chain dated 2/6/23 | HUB 897-899 |
| 151. | 28 - Email chain dated 2/7/23 | HUB 901-904 |
| 152. | 29 - Email chain dated 2/7/23 | HUB 906-907 |
| 153. | 30 - Email chain dated 2/7/23 | HUB 924-927 |
| 154. | 31 - Email chain dated 2/7/23 | HUB 929-935 |
| 155. | 32 - Email chain dated 2/7/23 | HUB 937-940 |
| 156. | 33 - Email chain dated 2/10/23 | HUB 952-955 |
| 157. | 34 - Email chain dated 2/10/23 | HUB 957-961 |
| 158. | 35 - Email chain dated 2/13/23 | HUB 974-977 |
| 159. | 36 - Email chain dated 2/14/23 | HUB 1057-1062 |
| 160. | 37 - Email from Jason Provenzano to George Lorenz | HUB 1085 |
| 161. | 38 - Email chain dated 2/17/23 | HUB 1090-1091 |
| 162. | 39 - Email chain dated 2/21/23 | HUB 1106-1109 |
| 163. | 40 - Email chain dated 2/22/23 | HUB 1120-1123 |
| 164. | 41 -Email chain dated 2/23/23 | HUB 1130-1133 |
| | **Andrew Schutzman Deposition Exhibits** | |
| 165. | Exhibit 1 Memo | AMS – 000001-000003 |
| 166. | Exhibit 2 Memo | 111 VETS-003106-003115 |

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| 167. | Exhibit 3 111-3143 Email chain dated 1/24/23 | 111 VETS-003143-003147 |
| 168. | Exhibit 4 Email | AMS - 000004 |
| 169. | Exhibit 5 Palumbo document | 111 VETS-003154 |
| 170. | Exhibit 6 111-3202 email chain dated 1/25/23 | 111 VETS-003202-003234 |
| 171. | Exhibit 7 111-3235 email chain dated 1/25/23 | 111 VETS-003235-003308 |
| 172. | Exhibit 8 chain dated 1/25/23 | 111 VETS-003313 |
| 173. | Exhibit 9 Memo | AMS – 000005-000006 111 VETS-003390-003392 |
| 174. | Exhibit 10 AMS 7 Memo and Valuation Standard Report | AMS – 000007-000008 111 VETS-004079-004083 |
| 175. | Exhibit 11 Memo | AMS – 000009-000010 |
| 176. | Exhibit 12 Email chain dated 5/19/23 | 111 VETS-004313-004327 |
| 177. | Exhibit 13 Email chain dated 5/19/23 | 111 VETS-004329-004333 |
| 178. | Exhibit 14 AMS 11 Portion of Lease | AMS – 000011-000047 |
| 179. | Exhibit 15 Email chain dated 2/1/23 | 111 VETS-003699-003700 |
| 180. | Exhibit 16 HUB document | HUB-000557-000558 |
| | **Michael Siegel Deposition Exhibits** | |
| 181. | 1 - Email chain dated 5/11/22 | |
| 182. | 2 - Email chain dated 5/12/22 | |
| 183. | 3 - Email chain dated 5/12/22 | |
| 184. | 5 - Email chain dated 6/30/22 | |
| 185. | 6 - Email from Michael Siegel to Bruce Sossaman and Scott Graf dated 8/28/22 | |
| 186. | 7 - Email from Jeffrey Feil to Michael Siegel dated 12/12/22 | |
| 187. | 8 - Email from Julie Foster to Bruce Sossaman and Scott Graf dated 1/20/23 | |
| 188. | 10 - Email chain dated 1/30/23 | |
| 189. | 11 - Email from Julie Foster to Feil Organization dated 2/1/23 | |
| 190. | 12 - Email from Julie Foster to Feil Organization dated 2/7/23 | |
| 191. | 13 - Email from Julie Foster to Feil Organization dated 2/14/23 | |

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| 192. | 14 - Email from Michael Siegel to Jeffrey Feil dated 2/14/23 | |
| 193. | 15 - Email chain dated 3/9/23 | 111 VETS-004109-004112 |
| 194. | 16 - Email chain dated 3/17/23 | |
| 195. | 17 - Email from Jeffrey Feil to Bill Goldring dated 4/14/23 | |
| 196. | 18 - Email chain dated 6/2/23 | |
| 197. | 19 - Email chain dated 6/12/23 | |
| 198. | 20 - Email from Keith Schneider to Michael Siegel dated 7/28/22 | |
| 199. | 22 - Email chain dated 3/9/23 | |
| | **Bruce Sossaman Deposition Exhibits** | |
| 200. | 1 - Email from Walker Davis to Bruce Sossaman dated 4/11/22 | |
| 201. | 4 - Email from Julie Hill to Bruce Sossaman dated 5/17/22 | |
| 202. | 5 - Email chain dated 6/30/22 | |
| 203. | 6 - Email chain dated 8/28/22 | |
| 204. | 7 - Email from Colette Wharton to Jeffrey and Brian Feil dated 9/7/22 | |
| 205. | 9 - Email chain dated 12/13/22 | |
| 206. | 14 - Email chain between Dale Karrh and Bruce Sossaman dated 2/7/23 | |
| 207. | 16 - Email chain dated 2/14/23 | |
| 208. | 17 - Email from Martin Miller to Bruce Sossaman dated 3/13/23 | |
| 209. | 18 - Email chain dated 3/17/23 | |
| 210. | 20 - Email from Colette Wharton to Jeffrey Feil and others dated 4/7/23 | |
| 211. | 21 - Email from Colette Wharton to Jeffrey Feil and others dated 5/10/23 | |
| 212. | 22 - Confidentiality Agreement between Corporate Realty and Stewart Development | |
| | **Colette Wharton Deposition Exhibits** | |
| 213. | 2 - Email chain dated 1/15/21 | 111 VETS-000760-0769 |
| 214. | 3 - Email chain dated 1/26/21 | 111 VETS-000940-0941 |
| 215. | 4 - Email chain dated 2/9/21 | 111 VETS-001281-1287 |
| 216. | 5 - Email chain dated 2/22/21 | 111 VETS-001432-1433 |
| 217. | 6 - Email chain dated 2/23/21 | 111 VETS-001444 |
| 218. | 8 - Email chain dated 5/6/21 | 111 VETS-001689-1692 |
| 219. | 9 - Email chain dated 4/27/22 | 111 VETS-001488-1512 |
| 220. | 10 - Email chain dated 4/27/22 | 111 VETS-001529-1531 |

- 35 -

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| 221. | 14 - Email chain dated 7/18/22 | 111 VETS-001855 |
| 222. | 15 - Email chain dated 9/30/22 | 111 VETS-002191-2249 |
| 223. | 16 - Email chain dated 10/14/22 | 111 VETS-002329-2332 |
| 224. | 18 - Email chain dated 12/12/22 | 111 VETS-002423 |
| 225. | 19 - Email chain dated 1/10/23 | 111 VETS-002512 |
| 226. | 20 - Email chain dated 1/20/23 | 111 VETS-003080-3085 |
| 227. | 21 - Email chain dated 2/1/23 | 111 VETS-003720-3728 |
| 228. | 24 - Email chain dated 2/7/23 | 111 VETS-003909-004017 |
| 229. | 27 - Email chain dated 3/17/23 | 111 VETS-004123-4125 |
| 230. | 30 - Email chain dated 4/18/23 | 111 VETS-004179-4181 |
| | **Evan Stone Deposition Exhibits** | |
| 231. | Exhibit 1 – Exclusive Sales Agreement | Stewart_Stone_000063-000073 |
| 232. | Exhibit 3 – Email between Evan Stone and Mamal Motahari dated 8/11/2022 | Stewart_Stone_008813-008814 |
| 233. | Exhibit 4 – June 30, 2022 Proposed Term Sheet for Sale of Stewarts' Interest | Stewart_Stone_006000-006001 |
| 234. | Exhibit 5 – Heritage Plaza In-Place P&L and Valuation for July 11, 2022 Meeting | Stewart_Stone_005992 |
| 235. | Exhibit 6 – Heritage Plaza In-Place P&L for July 25, 2022 Conversation | Stewart_Stone_005993-005994 |
| 236. | Exhibit 7  - Chart of Net Cash Flows and Returns Sensitivity | Stewart_Stone_005997 |
| 237. | Exhibit 8 - Chart of Net Cash Flows and Returns Sensitivity | Stewart_Stone_005995 |
| 238. | Exhibit 9 - Chart of Net Cash Flows and Heritage Plaza Cash Flow Projection | Stewart_Stone_005998-005999 |
| 239. | Exhibit 10 – Heritage Plaza Purchase Opportunity Summary | Stewart_Stone_006005-006049 |
| 240. | Exhibit 11 – Stewart Development, LLC Ground Lease | Stewart_Stone_002096-002255 |
| 241. | Exhibit 12 – Assignment and Assumption of Lease | Stewart_Stone_002080-002090 |
| 242. | Exhibit 13 Chart of Current Structure | Stewart_Stone_006002 |
| 243. | Exhibit 14 – Heritage Plaza Occupancy Rates 2011-2012 | Stewart_Stone_005970 |
| 244. | Exhibit 15 – Heritage Plaza Corridor Update Status | Stewart_Stone_005911 |
| 245. | Exhibit 16 – Heritage Plaza Major Tenants Workforce Summary | Stewart_Stone_005968 |
| 246. | Exhibit 17 – Heritage Plaza Restroom Update Status | Stewart_Stone_005979 |
| 247. | Exhibit 18 – Stewart Development, LLC Financial Statements December 31, 2021 and 2020 | Stewart_Stone_001997-002011 |

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| 248. | Exhibit 19 – Heritage Plaza (Stewart Development) (3645) Balance Sheet | Stewart_Stone_005738-005745 |
| 249. | Exhibit 20 – Email between Evan Stone and Michael Siegel regarding First Amendment to Confidentiality Agreement | |
| 250. | Exhibit 21 – Heritage Plaza Offering Memorandum | Stewart_Stone_001177-001254 |
| 251. | Exhibit 22 – Email chain dated 1/19/23 | |
| 252. | Exhibit 26 – Email chain dated 1/16/23 and Property Policies and Invoices | Stewart_005763-005825 |
| 253. | Exhibit 27 – Heritage Plaza REVISED Insurance Projection 2023 | Stewart_Stone_00259 |
| 254. | Exhibit 28 – Email chain dated 1/31/23 | Stewart_Stone_006483-006484 |
| 255. | Exhibit 29 – Email chain dated 1/31/23 and Heritage Plaza Status Report #1 | Stewart_008815-008821 |
| 256. | Exhibit 30 – Email from Evan Stone to Mamal Motahari dated 2/13/23 and Heritage Plaza Status Report #2 | Stewart_008822-008829 |
| 257. | Exhibit 34 Email chain dated 4/3/23 and 3/31/23 letter from Howell Crosby to Charles Stern | Stewart_006472-6482 |
| 258. | Exhibit 35 – Email chain dated 4/3/23 | Stewart_006541-006543 |
| 259. | Exhibit 36 – Email chain dated 4/18/23 | Stewart_Stone_006358-006359 |
| 260. | Exhibit 37 – Email from Evan Stoen to Mamal Motahari dated 4/19/23 and Heritage Plaza Valuation | Stewart_Stone_006360-006366 |
| 261. | Exhibit 38 – Email chain dated 4/19/23 | Stewart_Stone_006367-006369 |
| 262. | Exhibit 39 – Email chain dated 4/19/23 | Stewart_006470-006471 |
| 263. | Exhibit 40 – Email dated 5/15/23 from Gaines Seaman to Stewart Development and Fourth Amendment to the Lease | Stewart_Stone_006388-006398 |
| 264. | Exhibit 41 – Email chain dated 5/16/23 regarding Heritage Plaza March Rent Roll | Stewart_Stone_006400-006401 |
| 265. | Exhibit 42 – Email dated 5/15/23 from Gaines Seaman to Stewart Development regarding Fourth Amendment to the Lease | Stewart_Stone_006388-006398 |
| 266. | Exhibit 43 – Email chain dated 6/18/23 and Copy of Heritage Plaza Rent Roll 5.1.23 | Stewart_Stone_006402-006413 |
| 267. | Exhibit 45 – Email chain dated 9/18/23 | Stewart_Stone_006451 |
| 268. | Exhibit 46 – Email chain dated 2/26/23 | Stewart_Stone_006460-006462 |

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| 269. | Exhibit 47 – Email from Evan Stone to Karl Kehoe dated 9/29/23 regarding Heritage Plaza's current estimated market value | Stewart_Stone_006464 |
| | **Jeffrey Feil Deposition Exhibit** | |
| 270. | Exhibit 4 – Email from Jeffrey Feil to other Feil employees on 2/1/23 and Comparison and Taxes and Expenses | 111 VETS-003697-003398 |
| | **Expert Materials - Generally** | |
| 271. | CV of W. Anderson Baker | |
| 272. | CV of Arthur Sterbcow | |
| 273. | CV and Testimonial History of Edward Comeaux | |
| 274. | Exhibits I-VI attached to Edward Comeaux's Expert Report dated April 26, 2024 | |
| 275. | Exhibits I-II attached to Edward Comeaux's Supplemental Expert Report dated June 3, 2024 | |
| 276. | CV of F. Hale Stewart | |
| 277. | CV and Testimonial History of Ralph Litolff | |
| 278. | CV of Timothy Gold | |
| 279. | Rate Sheet and/or Invoices of Ralph Litolff | |
| 280. | Rate Sheet and/or Invoices of Timothy Gold | |
| | **Additional Arthur Sterbcow Expert Report Reliance Materials** | |
| 281. | Corporate Realty Class A office market reports available at https://corp-realty.com/reports/office-market-reports/ | |
| 282. | White House Statement on Competition available at https://www.whitehouse.gov/cea/written-materials/2021/07/09/the-importance-of-competitionfor-the-american-economy/ | |
| 283. | Assessment of the New Orleans office market by CoStar Analytics cited in Sterbcow Report | |
| 284. | Insurance Articles cited in Sterbcow Report and available at tps://ldi.la.gov/news/press-releases/march-26-2024---statementfrom-commissioner-tim-temple-on-state-farm-exiting-california-market-and-the-need-forinsurance-Reform; https://www.wsj.com/articles/business-insurance-roiled-by-climate-inflation-205049df; https://www.nola.com/news/business/in-tough-new-orleans-realestate-market-industry-experts-say-these-are-the-bright-spots/a rticle_3406ef1e-f6bc-11ee-9482-8353f2334ec0.html | |
| 285. | Lender Articles cited in Sterbcow Report and available at ehttps://www.fitchratings.com | |

- 38 -

| Exhibit No. | Description | Bates |
|---|---|---|
| 286. | Moody's data cited in Sterbcow Report and available at https://www.msn.com/enus/ money/realestate/us-office-buildings-face-117bn-debt-time-bomb-mortgages-due-this-yearthreaten-to-sink-us-economy-as-thousands-of-workplaces-remain-empty/ar-AA1mk5de | |
| 287. | Cap Rate Research cited in Sterbcow Report and available at https://www.cbre.com/insights/books/us-realestate-ma rket-outlook-2024/ca pita l-markets | |
| 288. | Email between Stone and Motahari dated August 11, 2022 | Stewart 8839-8840 |
| | **W. Anderson Baker III Expert Report Exhibits** | |
| 289. | Ex. 1 - Louisiana Department of Insurance "white list" | |
| 290. | Ex. 2 - IRMI definition of Market Cycles | |
| 291. | Ex. 4 - Amwins q4 2022 property market update See page 5. | |
| 292. | Ex. 5 - Amwins State of the Market q1 2023 See pages 22 and 23. | |
| 293. | Ex. 6 - Amwins State of the Market q1 2023  See page 2. Full report is in tab 5. | |
| 294. | Ex. 7 – Stewart Bates page 4657 | |
| 295. | Ex. 9 – Commercial Risk May 10, 2023 | |
| 296. | Ex. 10 - Business Insurance January 10, 2023 | |
| 297. | Ex. 11 - Commercial Risk November 28, 2023 | |
| 298. | Ex. 12 - Business Insurance March 5, 2024 | |
| 299. | Ex. 13 - Insurance Information Institute – facts and statistics – hurricanes | |
| 300. | Ex. 14 - National Oceanic and Atmospheric Administration – US Hurricanes | |
| 301. | Ex. 15 - Reuters January 10, 2023 | |
| 302. | Ex. 16 - Moody's January 10, 2023 | |
| 303. | Ex. 17 - Relief Web 2022 Analytical Overview | |
| 304. | Ex. 18 - SwissRe January 5, 2023 | |
| 305. | Ex. 19 - World Economic Forum July 30, 2021 | |
| 306. | Ex. 20 - Reuters February 22, 2022 | |
| 307. | Ex. 21 - IRMI Definitions – underwriting capacity | |
| 308. | Ex. 22 - Jencap State of the Market 2023 | |
| 309. | Ex. 23 - RPS State of the Property Market April 2023 | |
| 310. | Ex. 24 - Bureau of Labor Statistics - Inflation | |
| 311. | Ex. 25 - Gallagher Property Marketplace 2023 Q1 | |
| 312. | Ex. 26 - Amwins State of the Market Q1 2023 Complete report under tab 5. | |
| 313. | Ex. 27 - Commercial Risk May 10, 2023 | |
| 314. | Ex. 29 - Commercial Risk May 10, 2023 | |

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| 315. | Ex. 30 - Business Insurance January 10, 2023 | |
| 316. | Ex. 31 - Business Insurance May 9, 2023 | |
| 317. | Ex. 32 - Commercial Risk May 10, 2023 | |
| 318. | Ex. 33 - Insurance Information Institute – catastrophe modeling | |
| 319. | Ex. 34 - National Association of Insurance Commissioners – parametric insurance | |
| 320. | Ex. 35 - Business Insurance May 3, 2023 | |
| 321. | Ex. 36 - Business Insurance February 3, 2023 | |
| 322. | Ex. 37 – Stewart Bates page 4627 | |
| 323. | Ex. 38 - Stewart Bates pages 5645-5650 | |
| 324. | Ex. 39 - Statement of values for 2020 | |
| 325. | Ex. 40 - Stewart Bates pages 5355, 5362-5367 | |
| 326. | Ex. 41 - CoreLogic report 2021 | |
| 327. | Ex. 42 - Statement of values 2021 | |
| 328. | Ex. 45 - AmRisc loss runs | |
| 329. | Ex. 46 - Stewart Bates pages 5225 5234-5239 | |
| 330. | Ex. 47 - Statement of values 2022 | |
| 331. | Ex. 49 - Stewart Bates page 6103 | |
| 332. | Ex. 51 - Stewart Bates pages 3648 -3649 | |
| 333. | Ex. 52 - Commercial Risk May 10 2023 | |
| 334. | Ex. 53 - Stewart Bates pages 5483, 5494-5499 | |
| 335. | Ex. 54 - Statement of values for 2023 | |
| 336. | Ex. 55 - CoreLogic report 2023 | |
| 337. | Ex. 56 - Email dated May 5, 2023 from Amwins | |
| 338. | Ex. 57 - 111 Vets Bates pages 3144-3145 | |
| 339. | Ex. 59 - Stewart Bates page 8200 | |
| 340. | Ex. 60 - Stewart Bates page 8217 | |
| 341. | Ex. 62 - 111 Vets Bates page 3235-3236 | |
| 342. | Ex. 64 - Stewart Bates pages 5606 | |
| 343. | Ex. 65 - Stewart Bates page 4645 | |
| 344. | Ex. 66 - 111 Vets Bates pages 3235-3236 | |
| 345. | Ex. 67 - 111 Vets Bates page 4514 | |
| 346. | Ex. 68. - 111 Vets Bates page 4412 | |
| 347. | Ex. 69. - 111 Vets Bates page 4552 | |
| 348. | Ex. 70 - Hub Bates page 471 | |
| 349. | Ex. 71 - Hub Bates pages 553-558 | |
| 350. | Ex. 73 - Hub Bates page 1120 | |
| | **Additional Edward Comeaux Expert Report Reliance Materials** | |
| 351. | Heritage Plaza Loan Documents | Stewart_007677-07745 |
| 352. | Heritage-Audubon Engineering Proposal and Response | Stewart_008972-008978 |

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| 353. | Nineteenth Lease Amendment | Stewart_009002-009022 |
| 354. | Stirling Properties LLC Invoice dated March 15, 2024 | Stewart_009053-009064 |
| 355. | Stirling Properties LLC Invoice dated February 15, 2016 | Stewart_008979-008980 |
| 356. | Stirling Properties LLC Invoice dated September 24, 2015 | Stewart_008981-008982 |
| 357. | Stirling Properties LLC Invoice dated October 18, 2016 | Stewart_008983-008984 |
| 358. | Carr, Riggs & Ingram, LLC Certificate of Acceptance of Premises dated October 6, 2016 | Stewart_009065 |
| 359. | Heritage Plaza Response to Request for Proposal | Stewart_008989-009007 |
| 360. | Office Lease between Stewart Development, LLC and Carr, Riggs & Ingram, LLC | Stewart_009066-009120 |
| 361. | Projected Building Improvements and Major Repairs & Maintenance Expenses | Stewart_009123 |
| 362. | Stewart Development Prepaid Insurance Schedule as of December 31, 2023 | Stewart_008968 |
| 363. | Amendment to Exclusive Management and Leasing Agreement dated May 24, 2022 | Stewart_008969-008971 |
| 364. | Heritage Plaza 2023 Recoveries EOE | Stewart_009121 |
| 365. | Exclusive Management and Leasing Agreement Renewal Agreement | Stewart_009023-009052 |
| 366. | Heritage Plaza Offering Memorandum | |
| 367. | Heritage Plaza (3645) September – October 2022 Balance Sheet | Stewart_Stone_005738-005745 |
| 368. | Heritage Plaza (3645) January 2022 – November 2022 EBITDA Statement | Stewart_Stone_005746, 005780 |
| 369. | Heritage Plaza (3645) May – June 2022 Balance Sheet | Stewart_Stone_005747-005755 |
| 370. | Heritage Plaza (3645) June 2022 and September 2022 Quarterly Balance Sheet | Stewart_Stone_005756-005764 |
| 371. | Heritage Plaza (3645) January 1, 2022 – March 31, 2022 Statement of Net Income | Stewart_Stone_005765-005770 |
| 372. | Heritage Plaza (3645) April 1, 2022 – June 30, 2022 Statement of Net Income | Stewart_Stone_005771-005776 |
| 373. | Heritage Plaza (3645) July 1, 2022 – September 30, 2022 Statement of Net Income | Stewart_Stone_005777-005782 |
| 374. | Heritage Plaza (3645) 2021 Annual Statement | Stewart_Stone_005783, 005801-005802 |
| 375. | Captive Insurance Program Premium Breakdown for the period of May 15, 2023 – May 14, 2024 | Stewart_008793 |
| 376. | Stewart Development Captive Expenses Invoice dated June 13, 2023 | Stewart_008794 |
| 377. | Stewart Development Hartwell Insurance Co 2023 Annual Premium Invoice | Stewart_008795 |

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| 378. | Hartwell Insurance Company New Cell Formation Invoices | Stewart_008796-008797 |
| 379. | Heritage Plaza 2022 Budgeted Recoverable EOE Tenant Calculations | Stewart_008798 |
| 380. | Heritage Plaza 2023 Budgeted Recoverable EOE Tenant Calculations | Stewart_008799 |
| 381. | Heritage Plaza Rent Rolls – January 1, 2021-2023 and December 1, 2020-2023 | Stewart_008800-008806 |
| 382. | Stewart Development Consulting Fee-Property Captive Invoice dated May 12, 2023 | Stewart_008807 |
| 383. | Carr, Riggs, & Ingram 2023 Tenant Operating Expense Estimate Calculation | Stewart_008808-008811 |
| 384. | SD Insurance 2023 – 2024 Premium Breakdown | Stewart_008812 |
| 385. | Preliminary Damage Estimate prepared by Stewart | Stewart  009122 |
| 386. | MergerShark: Discount for Lack of Marketability Results Summary | |
| 387. | Dow Jone Industrial Average (^DJI) Historical Prices. Finance.yahoo.com | |
| 388. | NASDAQ Composite (^IXIC) Historical Prices Finance.yahoo.com | |
| 389. | Russell 2000 (^RUT) Historical Prices. Finance.yahoo.com | |
| 390. | S&P 500 (^GSPC) Historical Prices. Finance.yahoo.com | |
| 391. | "Measuring the Discount for Lack of Marketability for Noncontrolling, Nonmarketable Ownership Interests" by Nathan P. Novak, Gift and Estate Tax Valuation Insights, Winter 2016. | |
| | **Additional F. Hale Stewart Expert Report Reliance Materials** | |
| 392. | Hartwell Insurance Company file on Stewart's captive policy | Stewart_008903-008967 |
| 393. | Hartwell Insurance Company Business Plan for Stewart captive | Stewart_008854-008862 |
| 394. | State of Tennessee Approval Letter dated May 5, 2023 | Stewart  008843 |
| 395. | Frank B. Stewart Jr.'s August 2023 Financials | Stewart_008870-008875 |
| 396. | Hartwell Insurance Company file on Stewart's captive policy | Stewart_008903-008967 |
| 397. | Hartwell Insurance Company Business Plan for Stewart captive | Stewart_008854-008862 |
| 398. | State of Tennessee Approval Letter dated May 5, 2023 | Stewart_008843 |
| 399. | Stewart Parametric and Amrisc policies 2023 | Stewart_001148-001168, 001169-001189 |
| 400. | Stern Letter to Crosby dated May 30, 2023 | |

#5446973v1

| Exhibit No. | Description | Bates |
|---|---|---|
| 401. | Stern Letter to Crosby dated June 14, 2023 | |
| 402. | Ownership Sales Chart with Cover Email | Stewart_007657-7662 |
| 403. | SD Ownership Chart with Cover Email | Stewart_007645-7650 |
| 404. | Feil Org Email | 111 VETS_04333 |
| 405. | Tennessee Captive Insurance Act, T.C.A. 56-13-201, et seq. | |
| 406. | Articles cited in Hale Stewart's Expert Report | |
| 407. | Barron's Dictionary of Insurance Terms, 5th Edition, © 2008, pg. 32 | |
| | **Ralph Litolff Expert Report Reliance Materials** | |
| 408. | Litolff File of Reliance Emails:<br>2022-03-17 Email Sossaman to Feil<br>2022-05-12 Email from Siegel to Feil<br>2022-05-17 Email from Hill to Siegel<br>2022-05-26 Email from Graf to Siegel & Sossaman<br>2022-05-26 Email from Sossaman to Graf & Siegel<br>2022-06-30 Email Graf to Siegel & Sossaman<br>2022-08-28 Email Siegel to Sossaman & Graf<br>2022-08-29 Email Graf to Siegel<br>2022-08-30 Email Sossaman to Siegel & Graf<br>2022-09-07 Email Fell to Wharton<br>2022-09-07 Email Sossaman to Wharton<br>2023-03-13 Email Graf to Siegel<br>2023-03-13 Email Miller to Graf<br>2023-03-17 Email Feil to Sossaman<br>2023-03-17 Email Sossaman to Feil<br>2023-03-17 Email Wharton to Feil<br>2023-04-04 Email Sossaman to Wharton<br>2023-04-12 Email Sossaman to Ranu<br>2023-04-12 Email Zuniga to Sossaman<br>2023-04-28 Email Feil to Sossaman<br>2023-06-22 Email Karrh to Sossaman & Rosenberg | |
| | **Timothy Gold Expert Report Reliance Materials** | |
| 409. | Shifting climate, intensifying storms driving insurance crisis in Louisiana- propertycasualty 360 9-2023 | Gold Depo. Ex. 6 |
| 410. | Soft Landing into a Soft Market- independent agent 12-2004 | Gold Depo. Ex. 4 |
| 411. | What's in store for the P-C industry in 2004_--An economist and two analysts present their views 01-2004 | Gold Depo. Ex. 3 |
| 412. | Business Insurance – Market will remain hard, risk manages say | Gold Depo. Ex. 5 |
| | **Other** | |
| 413. | 2024-2025 insurance renewal documents | Stewart_09194-09329 |

#5446973v1

**B. 111 Veterans' Exhibit List**

1. Fourth Amendment to Ground Lease dated April 10, 2003.

2. March 6, 2013 e-mail string between Stewart Development and its insurance agent regarding Property Insurance requirements for new loan.  Stewart Depo. Exh. 12; Stewart_004194-4200.

3. April 16, 2013 Loan Agreement between Stewart Development and Cantor Commercial Real Estate Lending.  Stewart Dep. Exh. 13; Stewart_008021-8134.

4. Evidence of Property Insurance for 05/29/2013 through 05/29/2014 and related property insurance policies.  Stewart Depo. Exh. 16; Baker Depo. Exh. 5.

5. Evidence of Property Insurance for 05/29/2014 through 05/29/2015 and related property insurance policies.  Stewart Depo. Exh. 17; Baker Depo. Exh 7.

6. Evidence of Property Insurance for 05/29/2015 through 05/29/2016 and related property insurance policies.  Stewart Depo. Exh. 19; Baker Depo. Exh. 8.

7. November 2, 2017 Cash Sale of Property by Capital One, National Association, as Trustee of the Margaret Ellen Lauer Charitable Remainder Annuity Trust to 111 Veterans Boulevard, LLC, recorded in the Conveyance Records of Jefferson Parish as Book 3397, Page 436.

8. Certificate of Property Insurance for 05/29/17 through 05/29/18 and related property insurance policies.  Stewart Depo. Exh. 21; 111 Vets-004420.

9. Evidence of Property Insurance for 05/29/18 through 05/29/2019 and related property insurance policies.  Stewart-001879-1880.

10. Evidence of Property Insurance for 05/29/2019 through 05/29/2020 and related property insurance policies.  Stewart Depo. Exh. 22; 111 Vets-004421.

#5446973v1

11. May 12, 2020 e-mail string between Mamal Motahari and Anderson Baker regarding property insurance renewal 05/29/20.  Baker Depo. Exh. 10; AJG0000280-284.

12. May 17, 2021 e-mail string between Mamal Motahari and Anderson Baker regarding Heritage Plaza Insurance.  Stewart Depo. Exh. 25; Stewart_003762-3766.

13. Evidence of Property Insurance for 05/29/2020 through 05/29/2021 and related property insurance policies.  Stewart Depo. Exh. 23; Stewart-004003.

14. March 12, 2021 e-mail string between Stewart Development and its insurance agent regarding Heritage Plaza Replacement Cost.  Baker Depo. Exh. 12; AJG0001798-1800.

15. April 20, 2021 CoreLogic Valuation Standard Report for Heritage Plaza.  Baker depo. Exh. 14; Stewart_008887-8891.

16. Evidence of Property insurance for 05/29/21 through 05/29/22 and related property insurance policies.  Stewart Depo. Exh 27; Stewart_ 003729.

17. June 7, 2021 e-mail string Anderson Baker, PNC Real Estate and Stewart Development regarding premium increase.  Stewart Depo. Exh. 26; Stewart_003734-37.

18. Statement of Values 2021.  Baker Depo. Exh. 18; Stewart_008901.

19. Statement of Values 2022.  Baker Depo. Exh. 24; Stewart_008902-03.

20. April 5, 2022 e-mail from Anderson Baker to Mamal Motahari transmitting CoreLogic Valuation dated 02/08/22.  Stewart Depo. Exh. 29; Stewart_004294-004299.

#5446973v1

21. April 27, 2022 e-mail from Mamal Motahari to Colette Wharton transmitting Confidentiality Agreement and offering opportunity to purchase. Stewart Depo. Exh. 34; Stewart_006340-47.

22. April 27, 2022 e-mail from Colette Wharton to Jeffrey Feil transmitting e-mail from Mr. Motahari of the same date. Wharton Depo. Exh. 9; 111 Vets-001488-1512.

23. May 2, 2022 e-mail string between Mamal Motahari and Colette Wharton with fully executed Confidentiality Agreement, Marketing Package and Stewart Development Structure. Stewart Depo. Exh. 35; Stewart_006485-6540.

24. May 10, 2022 e-mail from Eric Lowenstein to Jeffrey Feil regarding Heritage Plaza. Lowenstein Depo. Exh. 18; 111 Vets-001693.

25. May 18, 2022 e-mail from Eric Lowenstein to Jon Estreich, et al, with copy to Jeffrey Feil transmitting Heritage Plaza Marketing Package and Rent Roll. Lowenstein Depo. Exh. 19; 111 Vets-001714 through 1761.

26. Evidence of Property Insurance for 05/29/2022 through 05/29/2023. Stewart Depo. Exh. 3l; 111 Vets-004422.

27. June 1, 2022 e-mail string with Eric Lowenstein and Mamal Motahari. Lowenstein Depo. Exh. 20; 111 Vets-001769-1775.

28. June 11, 2022 through June 11, 2023 Lakeway Associates Insurance. 111 Vets-004514.

29. June 30, 2022 e-mail from Jeffrey Feil to Eric Lowenstein transmitting e-mail from Mike Siegel regarding Heritage Plaza. Lowenstein Depo. Exh. 21; 111 Vets-001843.

30. August 8, 2022 Exclusive Sales Agreement between Stewart Development and Goodwin Advisors. Stone Depo. Exh. 1; Stewart_Stone_000063-73.

#5446973v1

31. September 7, 2022 e-mail from Colette Wharton to Jeffrey Feil regarding Lakeway/Carr Riggs deal.  Sossaman Depo. Exh. 7

32. December 12, 2022 e-mail from Evan Stone to Jeffrey Feil regarding Heritage Plaza. 111 Vets-002339-43.

33. January 10, 2023 e-mail from Jeffrey Feil to Colette Wharton transmitting e-mail from Evan Stone.  Wharton Depo. Exh. 19; 111 Vets-002512.

34. January 10, 2023 Evan Stone e-mail to Mamal Motahari transmitting Heritage Plaza Offering Memo; Executive Summary; and CA.  Stewart Depo. Exh. 38; Stewart_006626-6720.

35. January 15, 2023 e-mail from Jeffrey Feil to Evan Stone re: Heritage Plaza. Lowenstein Depo. Exh. 24; Stone Depo. Exh. 23; 111 Vets-002537.

36. January 15, 2023 e-mail string between Jeffrey Feil and Evan Stone regarding Heritage Plaza.  Lowenstein Depo. Exh. 25; Stone Depo. Exh. 24; 111 Vets-002544.

37. January 15, 2023 e-mail from Evan Stone to Mamal Motahari transmitting e-mail strong with Mr. Feil.  Stewart Depo. Exh. 39; Stewart_006758-59.

38. January 20, 2023 Memorandum from Andrew Schutzman to Brian Palumbo regarding Insurance Review for Heritage Plaza.  Schutzman Depo. Exh. 1; AMS-000001-3

39. January 20, 2023 Corelogic Valuation Standard Report for Heritage Plaza. Provenzano Depo. Exh. 3; HUB-000002-6.

40. January 24, 2023 e-mail from George Lorenz to Jeffrey Feil transmitting e-mail between Mr. Lorenz and Mr. Provenzano.  Lowenstein Depo. Exh/ 28; 111 Vets-003116-26.

#5446973v1

41. January 24, 2023 e-mail from Andrew Schutzman to Brian Palumbo transmitting Memorandum of same date.  Schutzman Depo. Exh. 3; 111 Vets-003143-47.

42. January 25, 2023 e-mail from Jeffrey Feil to Andrew Schutzman transmitting Heritage Plaza Insurance information received from Mr. Stone.  Schutzman Depo. Exh. 6; 111 Vets-003202-3234.

43. January 25, 2023 e-mail string between George Lorenz and Jason Provenzano regarding Heritage Plaza.  Schutzman Depo. Exh. 7; 111 Vets-003235-3308.

44. January 25, 2023 e-mail string between Darrell Longo to Jeffrey Feil regarding Heritage Plaza Insurance information.  Schutzman Depo. Exh. 8; 111 Vets-003313.

45. January 27, 2023 memorandum from Andrew Schutzman to Brian Palumbo regarding Heritage Plaza current insurance, with transmittal e-mail.  Schutzman Depo. Exh. 9; AMS-000005-6.

46. January 27, 2023 e-mail from Jason Provenzano to Andrew Schutzman transmitting Marshall & Swift (CoreLogic) report dated 01/20/2023.  Provenzano Depo. Exh. 13; HUB-000454-60.

47. January 27, 2023 e-mail from Jeffrey Feil to Eric Lowenstein regarding Heritage Plaza insurance.  Lowenstein Depo. Exh. 30; 111 Vets-003394.

48. January 31, 2023 e-mail string between Evan Stone and Mamal Motahari re: property tours.  Stewart Depo. Exh. 40; Stewart_006483-84.

49. January 31, 2023 e-mail string between Andrew Schutzman, Jeffrey Feil. And Jason Provenzano regarding Heritage Plaza.  Schutzman Depo. Exh. 16; HUB-000557-58.

50. January 31, 2023 e-mail string between Evan Stone and Mamal Motahari regarding Status Report One.  Stone Depo. Exh. 29; Stewart_008815-21.

#5446973v1

51. February 7, 2023 e-mail from Colette Wharton to Jeffrey Feil regarding Heritage Plaza Tour, with attachments.  Wharton Depo. Exh. 23; 111 Vets-003890-3908.

52. February 13, 2023 e-mail from Evan Stone to Mamal Motahari transmitting Status Report Two.  Stone Depo. Exh. 30; Stewart_008822-008829.

53. February 15, 2023 e-mail from Jason Provenzano to George Lorenz regarding Heritage Plaza.  Provenzano Depo. Exh. 37; HUB-001085.

54. February 23, 2023 Memorandum from Andrew Schutzman to Brian Palumbo regarding Heritage Plaza transmitting CoreLogic report.  Schutzman Depo. Exh. 10; AMS-000007-08; 111 Vets-004079-83.

55. March 9, 2023 e-mail from Evan Stone to Mamal Motahari transmitting Status Report Three.  Stewart Depo. Exh. 41; Stewart_008830-38.

56. March 13, 2023 e-mail from Martin Miller to Bruce Sossaman transmitting Executed Representation Letter with Audubon Engineering.  Sossaman Depo. Exh. 17.

57. March 16, 2023 letter from 111 Veterans to Stewart Development.  Stewart depo. Exh. 42; Stewart_003648;

58. March 20, 2023 e-mail from Anderson Baker to Howell Crosby regarding Default Notice.  Baker Depo. Exh. 32; Stewart_004159.

59. March 31, 2023 e-mail string between Evan Stone and Mamal Motahari regarding Jefferson Parish.  Stewart Depo. Exh. 43; Stewart-006468-69.

60. March 31, 2023 letter from Howell Crosby to Jeffrey Feil.  Wharton Depo. Exh. 29.

61. April 3, 2023 Memorandum from Andrew Schutzman to Brian Palumbo regarding Heritage Plaza ground lease. Schutzman Depo. Exh. 11; AMS-000009-10.

#5446973v1

62. April 3, 2034 e-mail string between Mamal Motahari and Evan Stone transmitting Mr. Crosby's March 31, 2023 response to default letter.  Stone Depo. Exh. 34; Stewart-006472-82.

63. April 3, 2023 e-mail strong between Evan Stone and Mamal Motahari regarding Heritage Plaza; Stone Depo. Exh. 35; Stewart_006541-43.

64. April 7, 2023 e-mail from Colette Wharton to Jeffrey Feil regarding counter to Carr Riggs/Lakeway deal.  Sossaman Depo. Exh. 20

65. April 18, 2023 e-mail string between Colette Wharton and Jeffrey Feil re: Heritage Plaza.  Wharton Depo Exh. 30; 111 Vets-004179-81.

66. April 19, 2023 e-mail string between Evan Stone and Mamal Motahari transmitting Heritage Valuation dated 09/08/2022.  Stone Depo Exh. 37; Stewart_Stone_006360-66.

67. April 19, 2023 e-mail string between Evan Stone and Mamal Motahari regarding Heritage Plaza Valuation. Stone Depo Exh. 38; Stewart_Stone_006367-69.

68. April 20, 2023 e-mail string between Anderson Baker and Mamal Motahari regarding insurance renewal.  Stewart Depo. Exh. 48; Stewart_004214.

69. April 21, 2023 e-mail string between Anderson Baker, Howell Crosby, and Mamal Motahari regarding ground lease.  Baker Depo. Exh. 35; Stewart_ 006132-34.

70. April 24, 2023 e-mail string between Mamal Motahari and Anderson Baker regarding captive cell proposal.  H. Stewart Depo. Exh. 17; Stewart_007645-50.

71. April 27, 2023 Pinnacle Actuarial Resources letter to Jennifer Meranda of Strategic Risk Solutions.  H. Stewart Depo. Exh. 7; Stewart_008903-04.

#5446973v1

72. Demotech, Inc. Rating Information Disclosure Form stated 04/28/2023.  H. Stewart Depo. Exh. 4; Stewart_008911-18.

73. Protected Cell Captive Insurance Company Individual Cell Application dated April 28, 2023.  H. Stewart Depo. Exh. 5; Stewart_008919-22.

74. April 28, 2023 Hartwell-Stewart Development Protected Cell Pro Forma.  H. Stewart Depo. Exh. 6; Stewart_008923-32.

75. May 3, 2023 e-mail from Mamal Motahari to JPMPB Stewart transmitting regarding mortgage payoff.  Stewart Depo Exh. 3; Stewart_008135-37.

76. May 3, 2023 Amended and Restated Promissory Note.  Stewart Depo. Exh. 4; Stewart_00767780.

77. May 3, 2023 Second Amended and Restated Promissory Note.  Stewart Depo. Exh. 5; Stewart_007685-88.

78. May 5, 2023 Tennessee Department of Commerce and Insurance letter to Hartwell Insurance Company.  H. Stewart Depo. Exh. 8; Stewart_008843.

79. May 10, 2023 e-mail from Colette Wharton to Jeffrey Feil regarding Audubon Engineering/Lakeway deal.  Sossaman Depo. Exh. 21.

80. May 14, 2023 Hartwell Insurance Property Policy.  H. Stewart Dep. Exh. 12; Stewart_008956-67.

81. May 16, 2023 letter from Charles Stern to Howell Crosby.

82. Hartwell Insurance Company Protected Cell Business Plan.  H. Stewart Depo. Exh,9; Stewart_008854-62.

83. Hartwell Insurance Company Program Management Agreement dated May 18, 2023.  H. Stewart Depo. Exh. 10; Stewart_008933-40.

#5446973v1

84. Participation Agreement dated May 18, 2023.  H. Stewart Depo. Exh. 11; Stewart_008941-51.

85. May 18, 2023 letter from Mr. Motahari to Mr. Feil with captive cell policy.  111 Vets-004315-27.

86. May 30, 2023 letter from Howell Crosby to Charles Stern transmitting Evidence of Property insurance and captive cell policy.  Stewart Depo. Exh. 44.

87. May 30, 2023 letter from Charles Stern to Howell Crosby regarding captive cell policy.  111 Vets-004336-38.

88. June12, 2023 e-mail from Jeffrey Feil to Jon Estreich transmitting e-mail with Evan Stone regarding Heritage Plaza.  Stone Depo. Exh. 44; Lowenstein Depo. Exh 43; 111 Vets-00412.

89. June 15, 2023 letter from Charles Stern to Howell Crosby.  Lowenstein Depo. Exh. 44.

90. September 29, 2023 e-mail from Evan Stone to Mamal Motahari regarding current estimated market value.  Stone Depo Exh. 47; Stewart_Stone_006464.

91. May 20, 2024 Memorandum from Andrew Schutzman to Charles Stern with attachments regarding Lakeway 3.  Gold Depo. Exh. 12; Gold Depo Exh. 11. (without last page of Gold Depo Exh.11).

92. Evidence of Property insurance for 05/29/2024 through 05/29/2025 and related property insurance policies.

93. Lakeway I and II insurance information for June 2022 through June 2024.  111 VETS-004514-004517.

#5446973v1

94. Lakeway III insurance information for 2020-2021 through 2023-2024. 111 VETS-004544-004547.

95. Any exhibit listed by any other party.

Stewart's Objections:  Stewart has no objection to the authenticity or relevancy of any exhibit, but reserves the right to object if 111 Veterans fails to lay the proper foundation to introduce an exhibit.

111 Veterans' Objections:  111 Veterans does not object to the authenticity or relevance of any of Stewart's exhibits.  It does object on hearsay grounds to various newspaper and periodical articles that were included on Stewart's exhibit list.  The exhibits to which the hearsay objection applies are Stewart Exhibits 282, 284-87, 291-99, 301-06, 308, 309, 311-21, 333, 391 and 406.

## 11.     **DEPOSITION TESTIMONY TO BE OFFERED INTO EVIDENCE:**

### A.      **PLAINTIFF / DEFENDANT-IN-COUNTERCLAIM**

Stewart intends to use deposition testimony of Jason Provenzano and Andrew Schutzman, as they are outside the subpoena power of this Court and unavailable under Fed. R. Civ. Proc. 32(a)(4).   Stewart may use the deposition testimony of 111 Veteran's corporate representative under Fed. R. Civ. Proc. 32(a)(3).   Stewart will also use deposition testimony of all witnesses for impeachment purposes.

### B.      **DEFENDANT / PLAINTIFF-IN-COUNTERCLAIM**

111 Veterans intends to use deposition testimony of Jason Provenzano, who is unavailable and whose deposition testimony therefore can be used at trial pursuant to Fed. R. Civ. Proc. 32(a)(4).  It may also use the deposition testimony of Stewart's corporate representative in accordance with Fed. R. Civ. Proc. 32(a)(3).

#5446973v1

**12.    DEMONSTRATIVE EXHIBITS:**

The parties generally do not object to the use of demonstratives as summarized below. The parties will exchange copies of the demonstratives by November 4th and file specific objections, if any, by the Court's November 11th deadline.

#### A.    PLAINTIFF / DEFENDANT-IN-COUNTERCLAIM:

1. Photograph of Lakeway I, II, and III

2. Photograph of Galleria

3. Photograph of Heritage Plaza

4. Timeline of 111 Veterans' Emails and LUTPA Scheme

5. Chart of Insurance Covering Heritage Plaza from 2017-Default

6. Chart Comparing Occupancy Rates at Lakeway, Galleria, and Heritage Plaza

7. Sample Co-Insurance Form

8. Snapshots of the Feil Organization's website

9. Summary Chart of Damages

10. Description of Insurance Industry Terms

#### B.    DEFENDANT / PLAINTIFF-IN-COUNTERCLAIM

1. Timeline of insurance coverage at Heritage Plaza beginning in 2013 and associated statements of value.

2. Timeline of Lakeway negotiations with Carr Riggs and Audubon Engineering

3. Timeline of 111 Veterans' communications concerning possible purchase of Heritage Plaza and insurance issues at Heritage Plaza.

4. Chart showing coverages in place at the Lakeway buildings from 2021-2024

#5446973v1

13.    **WITNESS LIST:**

The parties filed witnesses lists in accordance with prior court orders.  The parties have

exchanged expert reports in accordance with prior court orders.

      A.    **PLAINTIFF / DEFENDANT-IN_COUNTERCLAIM, STEWART**

      **Will Call:**

1.    Mohamad Motahari
Chief Executive Officer / Manager
Stewart Development, LLC

Mr. Motahari may be contacted through undersigned counsel.  Mr. Motahari has testimony that Stewart will use in support of its claims and defenses at trial. Specifically, Mr. Motahari is has information including but not limited to Stewart's business and operations, Stewart's business relationship and dealings with 111 Veterans, contracts entered into between Stewart and 111 Veterans, the Ground Lease, Stewart's development and management of Heritage Plaza, 111 Veterans' efforts to purchase Heritage Plaza, insurance coverage historically and presently in place at Heritage Plaza and similar properties, and the bad faith scheme instituted by 111 Veterans which forms the basis of Stewart's lawsuit. Mr. Motahari's testimony may include issues covered in his deposition.

2.    Evan Stone
Goodwin Advisors
14555 Dallas Pkwy Ste 100,
Dallas, TX 75254

Mr. Stone has testimony that Stewart will use in support of its claims and defenses at trial.  Specifically, Mr. Stone has information including but not limited to Stewart's business dealings with 111 Veterans and Mr. Feil, Stewart's operations and management of Heritage Plaza, 111 Veterans' efforts to purchase Heritage Plaza, Stewart's efforts to market and sell Heritage Plaza, buyers interested in Heritage Plaza, insurance coverage historically and presently in place at Heritage Plaza and similar properties, and the bad faith scheme instituted by 111 Veterans which forms the basis of Stewart's lawsuit. Mr. Stone's testimony may include issues covered in his deposition.

3.    Eric Lowenstein or other Corporate Representative of 111 Veterans
111 Veterans Boulevard, LLC

Mr. Lowenstein (or other Corporate Representative) may be contacted through counsel for 111 Veterans.  Mr. Lowenstein (or other Corporate Representative) has testimony that Stewart will use in support of its claims and defenses at trial.

Specifically, Mr. Lowenstein (or other Corporate Representative) has information including but not limited  111 Veterans' business and operations, 111 Veterans' business relationship and dealings with Stewart, contracts entered into between Stewart and 111 Veterans, Stewart's development and management of Heritage Plaza, 111 Veterans' efforts to purchase Heritage Plaza, insurance coverage historically and presently in place at Heritage Plaza and similar properties, and the bad faith scheme instituted by 111 Veterans which forms the basis of Stewart's lawsuit. Mr. Lowenstein's (or other Corporate Representative's) testimony may include issues covered in the deposition of 111 Veterans.

4.      Michael Siegel
        Corporate Realty
        201 St. Charles Ave.
        Suite 4411
        New Orleans, LA 70170

        Mr. Siegel has testimony that Stewart may use in support of its claims and defenses at trial.  Specifically, Mr. Siegel has information including but not limited to the local real estate market, 111 Veterans' efforts to purchase Heritage Plaza, insurance coverage historically and presently in place at Heritage Plaza and similar properties, and the bad faith scheme instituted by 111 Veterans which forms the basis of Stewart's lawsuit.  Mr. Siegel's testimony may include issues covered in his deposition.

5.      Andrew Schutzman (By Deposition or In Person)
        AMS Risk Management & Consulting, Inc.
        705 Bedford Ave., Suite D
        Bellmore, NY 11710

        Mr. Schutzman has testimony that Stewart may use in support of its claims and defenses at trial. Specifically, Mr. Schutzman has information including but not limited to 111 Veterans' business and operations, 111 Veterans' business relationship and dealings with Stewart, operations and valuations related to Heritage Plaza, 111 Veterans' efforts to purchase Heritage Plaza, insurance coverage historically and presently in place at Heritage Plaza and similar properties, and the bad faith scheme instituted by 111 Veterans which forms the basis of Stewart's lawsuit.

6.      Jason Provenzano (By Deposition Only)
        HUB International Northeast
        777 Commerce Drive
        Fairfield, Connecticut 06825

        Mr. Provenzano will be called to testify by deposition. Mr. Provenzano has testimony that Stewart may use in support of its claims and defenses at trial. Specifically, Mr. Provenzano has information including but not limited to 111 Veterans' business and operations, 111 Veterans' business relationship and dealings with Stewart, operations and valuations related to Heritage Plaza, 111 Veterans'

efforts to purchase Heritage Plaza, insurance coverage historically and presently in place at Heritage Plaza and similar properties, and the bad faith scheme instituted by 111 Veterans which forms the basis of Stewart's lawsuit.

7.   W. Anderson Baker, III
Arthur J. Gallagher & Co.
111 Veterans Memorial Boulevard
Metairie, LA 70005

Stewart will call Mr. Baker as a retained expert, as well as a fact witness and non-retained expert. As a retained expert, Mr. Baker will offer expert testimony and opinions as to the insurance market in the New Orleans area, the process for obtaining insurance and the availability of property insurance for Heritage Plaza as set forth in his report.

As a non-retained expert, Mr. Baker, who was the insurance broker for Stewart for many years, will offer fact and opinions regarding the process of obtaining property insurance on Heritage Plaza, the factors that went into play in placing property insurance, the availability of insurance and options at various times, the costs, his opinions on the market and the demand by 111 Veterans to obtain additional property insurance to comply with the Lease and whether the amounts demanded by 111 Veterans were available, obtainable or economically prohibitive. A number of Mr. Baker's non-retained opinions are contained in his report. Mr. Baker is expected to testify as to all reasonable corollaries to his opinions, as well as any additional opinions stated in his deposition and expert report.

8.   F. Hale Stewart
734 East 29th Street
Houston, TX 77009

Mr. Stewart may be called to offer expert testimony and opinions on the captive insurance policies as set forth in his report, as well as any additional opinions stated in his deposition and his expert report.

9.   Arthur Sterbcow, ABR, ABRM, CCIM, GRI
977 Great Southern Drive
Abita Springs, LA 70420

Mr. Sterbcow will be called to offer expert testimony and opinions on the local real estate market and related-insurance issues as set forth in his report, as well as any additional opinions stated in his deposition and expert report.

10.   Edward J. Comeaux, III, CPA/ABV and/or Austin M. Leboeuf, MBA, ABV
102 Wilson Ave.
P.O. Box 168
Houma, LA 70361

- 57 -

#5446973v1

Mr. Comeaux will be called to offer expert testimony and opinions on the damages sustained by Stewart as a result of 111 Veterans' actions as set forth in his report, as well as any additional opinions stated in his deposition and expert report.

11.  Collette Wharton
     111 Veterans Boulevard, LLC

Ms. Wharton may be contacted through 111 Veterans' counsel.   She has testimony that Stewart may use in support of its claims and defenses at trial.  Specifically, Ms. Wharton has information including but not limited to 111 Veterans' business and operations, 111 Veterans' business relationship and dealings with Stewart, contracts entered into between Stewart and 111 Veterans, Stewart's development and management of Heritage Plaza, 111 Veterans' efforts to purchase Heritage Plaza, insurance coverage historically and presently in place at Heritage Plaza and similar properties, and the bad faith scheme instituted by 111 Veterans which forms the basis of Stewart's lawsuit.  Ms. Wharton's testimony may include issues covered in her deposition.

12.  Mary Beth Verdigets
     Chief Financing Officer
     Stewart Development, LLC

If called, Ms. Verdigets may be contacted through undersigned counsel.  Ms. Verdigets has testimony that Stewart may use in support of its claims and defenses at trial.  Specifically, Ms. Verdigets has information including but not limited to Stewart's business and operations, Stewart's business relationship and dealings with 111 Veterans Boulevard, LLC, contracts entered into between Stewart and 111 Veterans, Stewart's development and management of Heritage Plaza, 111 Veterans' efforts to purchase Heritage Plaza, insurance coverage historically and presently in place at Heritage Plaza and similar properties, and the bad faith scheme instituted by 111 Veterans which forms the basis of Stewart's lawsuit.

**May Call:**

1.  Stacy Davis
    Former Building Manager
    Stewart Development, LLC

If called, Ms. Davis may be contacted through undersigned counsel.  Ms. Davis is likely to have testimony that Stewart may use in support of its claims and defenses at trial. Specifically, Ms. Davis is likely to have information including but not limited to Stewart's business and operations, Stewart's business relationship with 111 Veterans, Stewart's development and management of Heritage Plaza, 111 Veterans' efforts to purchase Heritage Plaza, insurance coverage historically and presently in place at

- 58 -

#5446973v1

Heritage Plaza, and the bad faith scheme instituted by 111 Veterans which forms the basis of Stewart's lawsuit.

2. Jeffrey Feil
Owner of 111 Veterans Boulevard, LLC

If called, Mr. Feil may be contacted through counsel for 111 Veterans. Mr. Feil is likely to have testimony that Stewart may use in support of its claims and defenses at trial. Specifically, Mr. Feil is likely to have information including but not limited to 111 Veterans' business and operations, 111 Veterans' business relationship and dealings with Stewart, contracts entered into between Stewart and 111 Veterans, Stewart's development and management of Heritage Plaza, 111 Veterans' efforts to purchase Heritage Plaza, insurance coverage historically and presently in place at Heritage Plaza and similar properties, and the bad faith scheme instituted by 111 Veterans which forms the basis of Stewart's lawsuit. Mr. Feil's testimony may include issues covered in his deposition.

3. Alec Fritchie
Arthur J. Gallagher & Co.
111 Veterans Memorial Boulevard
Metairie, LA 70005

If called, Mr. Fritchie is likely to have testimony that Stewart may use in support of its claims and defenses at trial. Specifically, Mr. Fritchie is likely to have information including but not limited to insurance coverage historically and presently in place at Heritage Plaza and similar properties, the local insurance market, common insurance practices, and the bad faith scheme instituted by 111 Veterans which forms the basis of Stewart's lawsuit.

B. **DEFENDANT:**

**Will Call**

1. Eric Lowenstein

Mr. Lowenstein is the Chief Financial Officer at The Feil Organization. He will testify concerning Feil's analysis of the possible purchase of Heritage Plaza, the insurance concerns that arose during that analysis, and other related matters concerning the office building market in 2022 and 2023 and Feil's insurance coverage at similar properties.

- 59 -

2.   Colette Wharton

Ms. Wharton will testify concerning her involvement in Feil's consideration of a possible purchase of Heritage Plaza, as well as leasing activities at Lakeway and Galleria and the competition between those buildings and Heritage Plaza.

3.   Bruce Sossaman

Mr. Sossaman will testify concerning his leasing activities on behalf of Lakeway and his and his firm's knowledge and data concerning the leasing and occupancy of other office buildings in the New Orleans area, including Heritage Plaza.

4.   Andrew Schutzman

Mr. Schutzman will testify concerning his activities on behalf of Feil in the placement of insurance, particularly with respect to the three Lakeway buildings, as well as his analysis on behalf of Feil of the insurance coverage in place at Heritage Plaza.

5.   Timothy Gold

Mr. Gold is an expert witness concerning a number of the insurance issues in the case and will testify concerning the matters covered in his expert report.

6.   Ralph Litolff

Mr. Litolff is an expert forensic accountant and is expected to testify concerning the damages issues discussed in his expert report.

#5446973v1

**May Call**

7.    Michael Siegel

If called, Mr. Siegel will testify concerning leasing activities by Corporate Realty at Lakeway and Galleria and the information maintained by Corporate Realty concerning the leasing and occupancy of office buildings in the New Orleans area.

8.    Any witness listed by Stewart Development, LLC

**14.    JURY STATEMENT:**

The is a non-jury case.  As approved by the Court, the parties shall submit their suggested findings of fact and conclusions of law and a separate trial memorandum to be electronically filed with the Court by November 5, 2024.

**15.    SEPARATE TRIALS ON THE ISSUE OF LIABILITY AND QUANTUM:**

The issue of liability will not be tried separately from that of quantum.

**16.    OTHER MATTERS WHICH MAY EXPEDITE THE DISPOSITION OF THE CASE:**

The parties are not aware of any matters that might expedite a disposition of the case.

**17.    TRIAL DATE/NUMBER OF DAYS REQUIRED FOR TRIAL:**

The non-jury trial shall commence on Monday, November 18, 2024 at 9:00 a.m. and will last approximately 5 days.

**18.    STATEMENT REGARDING CONFECTION OF PRE-TRIAL ORDER:**

This pre-trial order has been formulated after a conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial

#5446973v1

and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19.    **SETTLEMENT STATEMENT:**

The possibility of settlement of this case was considered.  A settlement conference was held on June 24, 2024 before Judge Dossier, which concluded at an impasse.

Respectfully Submitted:

By:    /s/ Amy L. McIntire
Peter J. Rotolo, III (La. Bar No. 21848)
Amy L. McIntire (La. Bar. No. 35241)
**CHAFFE McCALL, LLP**
1100 Poydras Street, 2300 Energy Centre
New Orleans, LA  70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
Email: rotolo@chaffe.com
          mcintire@chaffe.com
*Attorneys for Stewart Development, LLC*

-and-

By:    /s/ Charles L. Stern, Jr,
Charles L. Stern, Jr, (#12451)
Richard L. Traina (#22170)
**STEEG LAW FIRM**
201 St. Charles Avenue, Suite 3201
New Orleans, LA 70170
Telephone: 504-582-1199
Facsimile: 504-582-1240
Email: cstern@steeglaw.com
          rtraina@steeglaw.com
*Attorneys for 111 Veterans Boulevard, LLC*

Signed this __5th__ day of ___November___, 2024 in New Orleans, Louisiana.

**Honorable District Judge Brandon Long**
**United States District Court**
**Eastern District of Louisiana**

- 62 -

#5446973v1